**Lester G. ADAMS, and Jean D. Adams, as husband and wife, and Trustees of the Lester G. Adams and Jean D. Adams 1984 Living Trust, Plaintiffs/Counterdefendants,**

**v.**

**UNITED STATES of America; Secretary of Agriculture of the United States of America, acting through the United States Department of Agriculture and the Forest Service of the United States; the Secretary of Interior of the United States, acting through its Director of the Bureau of Land Management, a Division of the United States Department of Interior; Individual Defendants, John Does 1 through 10, Defendants/Counterplaintiffs.**

No. CV–S–86–548–PMP.

United States District Court,
D. Nevada.

May 19, 1988.

James A. Ririe, H. Leon Simon, Las Vegas, Nev., for plaintiffs/counterdefendants.

William A. Maddox, U.S. Atty., David Moynihan, Asst. U.S. Atty., Las Vegas, Nev., for defendants/counterplaintiffs.

## FINDINGS OF FACT, MEMORANDUM OPINION AND ORDER

PRO, District Judge.

This is a quiet title action to clarify the description and boundaries of real property owned by Plaintiffs and located in Clark Canyon, Clark County, Nevada (the "Property"), and to declare that the Plaintiffs have easements for access roads to, and use of water for the benefit of, the Property.

Plaintiffs' Complaint (# 1) was filed June 6, 1986. The Court's Order granting Plaintiffs' Motion for Leave to Amend Complaint (# 53), was filed on May 9, 1988. The Second Amended Complaint, attached to Plaintiffs' Motion (# 53), is the subject of this Memorandum Opinion and Order, inasmuch as Counts I through IV are substantively identical to those contained in Plaintiffs' Amended Complaint (# 4), filed October 2, 1986, and the subject of the myriad of motions, cross motions, and responses filed on behalf of both parties.

Defendant's Counterclaim (# 6), filed January 12, 1987, alleges conduct on National Forest land without a special use permit, with a request for injunctive relief and money damages. The pleadings before the Court are voluminous as well as factually and legally intricate. The specific nature of Plaintiffs' Second Amended Complaint, Defendant's Counterclaim, and the relief requested are discussed herein.

The Court has jurisdiction of Plaintiffs' Second Amended Complaint, Counts I–IV, pursuant to 28 U.S.C. § 2409a and 28 U.S.C. § 1346(f). The Court reserves comment on the jurisdictional basis of Counts V and VI contained in Plaintiffs' Second Amended Complaint, pending responsive pleadings from Defendant. The Court has jurisdiction of Defendant's Counterclaim pursuant to 28 U.S.C. § 1345.

## FINDINGS OF FACT

Pursuant to Local Rule 190–3, the parties to this action filed a Pretrial Order (# 71) on November 23, 1987. The Pretrial Order contains 21 facts admitted by the parties, which therefore require no proof. In addition, the Court has examined the entire record, including pleadings, exhibits, affidavits, and depositions, and has heard oral argument from counsel for the parties at the omnibus hearing held on May 6, 1988. Each of the following findings of fact indicates whether it was admitted by the parties pursuant to the Pretrial Order, or alternatively, the source within the record from which the Court has made the particular finding of fact.

1. Lester G. Adams and Jean D. Adams acquired the following described real property (the "Property") on or about October 16, 1964:

PARCEL I: The South Half (S–1/2) of the Southwest Quarter (SW–1/4) of Section 5, Township 19 South, Range 56 East, M.D.M.

PARCEL II: The North Half (N–1/2) of the Northwest Quarter (NW–1/4) and the Northwest Quarter (NW–1/4) of the Northeast Quarter (NE–1/4) of Section 7, Township 19 South, Range 56 East, M.D.M.

PARCEL III: The North Half (N–1/2) of the Northeast Quarter (NE–1/4) of Section 12, Township 19 South, Range 55 East, M.D.M., AND

PARCEL IV: The South Half (S–1/2) of the Southeast Quarter (SE–1/4) and the Northwest Quarter (NW–1/4) of the Southeast Quarter (SE–1/4) of Section 1, Township 19 South, Range 55 East, M.D.M.

(# 71, ¶ 3.1)

2. The Grant Bargain and Sale Deed by which title was conveyed to Lester G. Adams and Jean D. Adams was recorded October 23, 1964, at Book No. 580, Instrument No. 467110, describing the real property conveyed as follows:

PARCEL I: The South Half (S–1/2) of the Southwest Quarter (SW–1/4) of Section 5, Township 19 South, Range 56 East, M.D.M.

PARCEL II: The North Half (N–1/2) of the Northwest Quarter (NW–1/4) and the Northwest Quarter (NW–1/4) of the Northeast Quarter (NE–1/4) of Section 7, Township 19 South, Range 56 East, M.D.M.

PARCEL III: The North Half (N–1/2) of the Northeast Quarter (NE–1/4) of Section 12, Township 19 South, Range 55 East, M.D.M., AND

PARCEL IV: The South Half (S–1/2) of the Southeast Quarter (SE–1/4) and the Northwest Quarter (NW–1/4) of the Southeast Quarter (SE–1/4) of Section 1, Township 19 South, Range 55 East. M.D.M.

GRANTORS herein hereby convey all water rights appurtenant to the above described Real Property to GRANTEES herein.

SUBJECT TO:

1. Taxes for the fiscal year 1964–65 and subsequent thereto.

2. Restrictions, conditions, reservations rights of way, and easements now of record.

(# 71, ¶ 3.2)

3. Prior to purchase of the Property, Plaintiffs obtained a preliminary title report from Pioneer Title Insurance Company of Nevada. (# 68, Exhibit B attached thereto)

4. After purchasing the Property, Plaintiffs commissioned L.A. Harris, a registered engineer and land surveyor, to survey the Property. The survey was completed and recorded on June 16, 1965. A copy of the map of the survey was presented to Plaintiffs. (# 48, Exhibit A attached thereto)

5. Lester G. Adams and Jean D. Adams transferred the Property to Lester G. Adams and Jean D. Adams, Trustees for the Lester G. Adams and Jean D. Adams 1984 Living Trust by a Deed dated October 23, 1984, which was recorded December 4, 1984. (# 71, ¶ 3.3)

6. Township 19 South, Range 56 East, M.D.M., Nevada, was originally surveyed in 1881. (# 71, ¶ 3.4)

7. Township 19 South, Range 56 East, M.D.M., Nevada, was resurveyed by the United States, which resurvey was officially accepted on January 25, 1939. (# 71, ¶ 3.5)

8. That portion of the Property located in Township 19 South, Range 56 East, M.D.M., Nevada, was described in the 1939 resurvey as Tract 41 and Tract 42. (# 71, ¶ 3.6)

9. Pursuant to Department of Interior regulations, and prior to the commencement of the 1939 resurvey, the Forest Service gave each owner of private land within the area to be resurveyed an opportunity to protest the proposed resurvey. The then owner of the Property, Jean Cazaurang, was so notified in 1928. In a letter received by the Forest Service on April 14, 1928, she responded that she had no objections. (# 91, Exhibits A, B, and C attached thereto.)

10. The 1939 resurvey was conducted under the authority of the *Manual of Instructions for the Survey of the Public Lands of the United States*, 1930 Ed. (# 82, Affidavit of Lacel E. Bland, Exhibit D attached thereto, at 2, ¶ 4, pg. 3, ¶¶ 10–16.)

11. The 1939 resurvey did not change the original description, acreage, or size of Tract 41 or Tract 42. (Id., at 9–10, ¶¶ 19–20.)

12. The 1939 resurvey utilized the corners of the 1881 survey to identify the

patented land. While the 1939 resurvey of Tract 42 does not correlate to. the 1881 survey as shown on the original survey plat, the corner evidence demonstrates that the 1881 plat does not reflect the true conditions of the original survey. Pursuant to the standards and procedures mandated by the *Manual,* original corners or corners restored by the dependent method are controlling over the written record. Consequently, the 1939 resurvey did not change the legal description of the patented land as it occupies the same location on the earth's surface as it did when the 1881 survey was completed. (Id., at 12, 13, ¶¶ 23–24.)

13. In a letter dated May 13, 1936 addressed to the United States Department of the Interior, General Land Office, Carl S. Swanholm, field surveyor during the 1939 resurvey proposed, *inter alia,* that Tract 42 be realigned in an alternative configuration. (Id., Exhibit A attached thereto.) While most of Swanholm's recommendations were accepted, the General Land Office rejected his suggestion to ignore the identified original corners and properly restored corners on the ground. (*Id.,* Exhibit E attached thereto.)

14. Prior to completing the purchase of the Property in 1964, Plaintiff Lester Adams inspected the Property, and relied on the description of the Property as portrayed on a map based on the 1939 resurvey. (# 69, Deposition of Lester G. Adams, Exhibit D attached thereto, at 8, ln. 5–24.)

15. The United States held title to the Property prior to 1892. The Property was then transferred to the State of Nevada pursuant to an act to grant the State of Nevada lands in lieu of the sixteenth and thirty-sixth sections in said State, Chapter 245, 46th Cong., 2d Sess. (June 16, 1880), as state selection lands. (# 71, ¶ 3.7)

16. Thereafter, the Property was sold to private owners and states patents were issued as follows:

| | | |
|---|---|---|
| July 15, 1892 | George Butler | SW ¼ of SW ¼, Sec. 5, T. 19 S., R. 56 E. |
| | | W ¼ of SE ¼, Sec. 1, T. 19 S., R. 55 E. |
| | | NE ¼ of NE ¼, Sec. 12, T. 19 S. R. 55 E. |
| Sept. 13, 1892 | Benjamin Darmert | NW ¼ of NE ¼, Sec. 7, T. 19 S., R. 56 E. |
| Oct. 9, 1895 | Benjamin Darmert | SE ¼ of SW ¼, Sec. 5, T. 19 S., R. 56 E. |
| June 24, 1896 | Benjamin Darmert | SE ¼ of SE ¼, Sec. 1, T. 19 S., R. 55 E. |
| | | NE ¼ of NW ¼, Sec. 7, T. 19 S., R. 56 E. |
| Feb. 14, 1899 | Benjamin Darmert | NW ¼ of NE ¼, Sec. 12, T. 19 S., R. 55 E. |
| | | NW ¼ of NW ¼, Sec. 7, T. 19 S., R. 56 E. |

(# 71, ¶ 3.8)

17. The Property is located in a mountainous area on the west slope of Mount Charleston, Clark County, Nevada and is west of Las Vegas, Nevada. (# 71, ¶ 3.9)

18. Lester G. Adams and Jean D. Adams have improved the Property by constructing a home, by constructing seven other buildings and by establishing 45 acres of irrigated horse pasture. (# 71, ¶ 3.10)

19. On August 20, 1976, Lester G. Adams received a Certificate of Appropriation of Water from the State of Nevada. The appropriation is for irrigation and domestic use on a portion of the Property. The source of the appropriated water is the Clark Canyon Spring located in Tract 41. The date of priority of appropriation is December 7, 1970. (# 71, ¶ 3.11)

20. Overland access to the Property has been through land owned by the United States since the date of the state patents. (# 71, ¶ 3.12)

21. In 1964, when Lester G. Adams and Jean D. Adams purchased the Property, the Clark Canyon access road was washed out and could not be traveled by motor vehicle. Their first access was through the North Canyon. (# 71., ¶ 3.13)

22. Plaintiffs, and Plaintiffs' predecessors in interest, have never had a Special Use Permit authorizing maintenance, modification or construction of roads across federal land. (# 71, ¶ 3.14)

23. Lester Adams installed two pipelines between Tract 41 and Tract 42, which

necessarily cross National Forest land. The first line was installed in or around 1965. (#7, Reply to Counterclaim, at ¶¶ 5, 6.) Adams installed a second line during the summer of 1980. This line did not follow the course of the previously installed water line. (# 67, Deposition of Lester G. Adams, Exhibit A attached thereto, at 33, ln. 34, ln. 14.)

24. Adams constructed a road along the southern boundary of Tract 42 in 1981, which he originally described as "fuel brake work." (# 67, Exhibit B attached thereto.)

25. Adams established the route to be followed by the equipment operator in the construction of the "fuel brake" road. (# 67, Deposition of Lester G. Adams, Exhibit C attached thereto, at 63, ln. 4–66, ln. 20.)

26. Adams has maintained portions of Forest Development Road 20071 to the west of the Property and between Tract 41 and Tract 42, since 1964. (# 67, Deposition of Lester G. Adams, Exhibit D attached thereto, at 83, ln. 7–87, ln. 2.)

27. Adams has modified and maintained a drainage ditch on National Forest land west of the Property since 1986. (# 67, Deposition of Lester G. Adams, Exhibit E attached thereto, at 78, ln. 6–14.)

28. The area immediately surrounding the Property was removed from the public domain on November 11, 1906, when the National Forest was established in the area. The surrounding property is still National Forest. (# 71, ¶ 3.15)

29. The United States has never denied Plaintiffs or their predecessors in interest access across the public domain or the National Forest to reach the Property. (# 71, ¶ 3.16)

30. Plaintiffs' predecessor in interest, Ervine Rey Van Horn and Caroline Van Horn, executed a Deed on March 27, 1959, to W.S. Robinson, recorded April 17, 1959, with the following as a portion of the legal description:

> The hereinabove described parcels of land in Sections 5 and 7, Township 19 South, Range 56 East, M.D.B. & M., are described according to the original survey of Township 19 South, Range 56 East, M.D.B. & M. Said parcels are further described as Government Tracts 41 and 42 according to the independent resurvey of Township 19 South, Range 56 East, M.D.B. & M., accepted January 25, 1939.

On April 15, 1959, W.S. Robinson deeded said property to University Plaza, Inc., a New York Corporation, by a deed which incorporated the identical language. (# 71, ¶ 3.17)

31. Frank Buol, predecessor in title to Plaintiffs, granted the United States a deed evidencing a right of way 50 feet in diameter across the Property. (# 50, copy attached thereto)

32. The "Frank Buol, Right of Way Deed" (the "Buol Deed") was recorded in the Clark County, Nevada Recorder's Office on October 5, 1937. (# 71, ¶ 3.18)

33. Lester G. Adams was advised of the claim of the United States based on the Buol Deed by a letter signed by A.W. Ashton of the Forest Service, dated November 1, 1973 (the "Forest Service Letter"). Adams received the Forest Service Letter on November 3, 1973. (# 71, ¶ 3.19)

34. The Forest Service Letter stated, "We have found a deed executed by Frank A. Buol granting a right-of-way for the Clark Canyon road, a copy enclosed." A copy of an abstract of the Buol Deed was enclosed. (# 71, ¶ 3.20)

35. The Forest Service Letter advised Lester Adams that a gate on the Forest Development Road 20071 should be removed inasmuch as the Forest Service had found the Buol Deed. (# 68, Exhibit C attached thereto.)

36. The abstracted copy of the Buol Deed enclosed with the Forest Service Letter contained language which granted an easement and right of way,

> [f]or the construction, maintenance, and full, free and quiet use and enjoyment by the United States of America for any and all purposes by them desired or deemed necessary or beneficial and by the general public as a highway, being fifty feet in

width and traversing the above described premises....

\* \* \* \* \* \*

This grant to be effective as long as said easement shall be actually used for any of the purposes above specified, *etc.* (Emphasis added.)

(# 85, Exhibit B attached thereto.)

37. After receiving the Forest Service Letter and abstract of the Buol Deed, Plaintiff Lester Adams consulted an attorney, Herman Milo Adams. (# 68, Deposition of Herman Milo Adams, Exhibit F attached thereto, at 35, lns. 19–21.)

38. Plaintiff Lester Adams was advised by attorney Herman Adams to "sit on it." (# 68, Deposition of Lester G. Adams, Exhibit G, at 47, ln. 19–48, ln. 2;  # 68, Deposition of Lester G. Adams, Exhibit H attached thereto, at 57, ln. 25 to pg. 58, ln. 3.) Attorney Herman Adams also recommended that Lester Adams obtain a copy of the original recorded Buol Deed. (#68, Deposition of Herman Milo Adams, Exhibit I attached thereto, at 35, ln. 24 to pg. 36, ln. 4; # 68, Deposition of Lester G. Adams, Exhibit J attached thereto, at 54, ln. 4–21.)

39. The Forest Service had in its possession a copy of the original recorded Buol Deed, as well as the abstract, which was enclosed with the Forest Service Letter. (# 85, Deposition of Robert Wize, Exhibit A attached thereto, at 21, ln. 16–17.)

40. A certified copy of the original recorded Buol Deed contains a reversionary clause which is not included in the abstract enclosed with the Forest Service Letter. Commencing in lieu of the appreciation, "etc.," as contained in the abstract, the reversionary clause provides *in toto* as follows:

 . . . and all rights hereunder granted shall revert to the owner of the land when said use shall have been abandoned and discontinued for a term of ten years or longer.

(# 85, Exhibit C attached thereto.)

41. On August 20, 1976, counsel for Plaintiffs received, for the first time, a certified copy of the original recorded Buol Deed.   (# 85, Affidavit of Herman Milo Adams, attached thereto, at 2, ln. 5.)

42. An excerpt from the Land Use Plan, Mount Charleston Planning Unit, Toiyabe National Forest, officially approved by the Forest Service on September 16, 1976, indicates that the Office of General Counsel opined that the right of way reserved by the Buol Deed "is questionable and other remedies should be sought," and that "[t]he property owner has more recently [prior to September 16, 1976] denied access to the Forest Service."   (# 85, Exhibit D and E attached thereto.)

43. The Forest Service has periodically entered upon the Property, under color of the right of way established by the Buol Deed for several purposes, including field work in anticipation of the construction of a road (never completed), reforestation, snow measurement, and forest fire prevention patrols.   (# 95, Declaration of David Young, attached thereto.)

44. Pioneer Title Insurance Company of Nevada acknowledged its error in failing to locate the Buol Deed in the chain of title of the Property.   (# 71, ¶ 3.21)

45. Pioneer Title Insurance Company of Nevada offered to compensate Plaintiffs for failing to find the Buol Deed within the chain of title.   (# 68, Deposition of Lester G. Adams, Exhibit L attached thereto, at 56, ln. 1–9;  # 68 Deposition of Herman Milo Adams, Exhibit M attached thereto, at 37, ln. 8–19.)

46. Lester Adams refused to accept any compensation from Pioneer Title Insurance Company of Nevada following the discovery of the Buol Deed. (# 68, *Id.*, at 56, ln. 11; *Id.*, at 35, ln. 15–16.)

## STANDARD FOR GRANT OF SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

**1486**

moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982). However, this does not require that the moving party support its motion with affidavits or other similar material negating the opponent's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986); *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982); *United States v. First National Bank of Circle.*, 652 F.2d 882, 887 (9th Cir.1981).

All facts and inferences drawn must be viewed in the light most favorable to the responding party, when determining whether a genuine issue of material fact exists for summary judgment purposes. *Pollar v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if

all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor.*, 677 F.2d 1297, 1298 (9th Cir.1982). Applying these legal principles, the Court concludes, for the reasons discussed *infra,* that Defendant's Motions for Summary Judgment regarding Plaintiffs' first and fourth causes of action, respectively, must be granted, and that all other summary judgment motions before the Court must be denied.

CONCLUSIONS OF LAW

COUNT I (QUIET TITLE ACTION)

Plaintiffs' contend that certain portions of the Property has been divested from them following the 1939 resurvey. Plaintiffs cite the federal law which provides that a land patent, once granted, cannot be impaired by a resurvey. Defendant contends that Plaintiffs' first cause of action is barred by the applicable statute of limitations. 28 U.S.C. § 2409a(g). Furthermore, Defendant contends that the 1939 resurvey establishes the correct boundaries to the Property.

The Quiet Title Act, 28 U.S.C. § 2409a *et seq.* limits the period in which parties may file quiet title actions against the United States:

> Any civil action under [the Quiet Title Act] shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff *or his predecessor in interest knew or should have known* of the claim of the United States. 28 U.S.C. § 2409a(f) (emphasis added.)

The Quiet Title Act's statute of limitations on the United States' waiver of sovereign immunity is strictly construed. *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Nevada v. United States*, 731 F.2d 633, 634 (9th Cir.1984). Moreover, "[t]imeliness under subsection (f) is a jurisdictional prerequisite to suit under section 2409a." *Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 452 (10th Cir.1985). Plaintiffs filed their Complaint (# 1) on

June 6, 1986, and filed a Motion to Amend on October 2, 1986. Thus, if Plaintiffs or their predecessor in interest knew or · should have known of the United States' claim to the disputed boundary and acreage before June 6, 1974, the first cause of action must be dismissed as time-barred.

■ Defendants filed a Motion to Dismiss Count I of Plaintiffs' Amended Complaint (# 48), based on Plaintiffs' failure to plead the date on which they knew or should have known of the claim of the United States, as required by 28 U.S.C. § 2409a(g). In their Response (# 63), which cites *United States v. Georgia–Pacific Co.*, 421 F.2d 92 (9th Cir.1970), Plaintiffs assert that the doctrine of equitable estoppel precludes Defendant from relying on the statute of limitations as a bar to Plaintiffs' first cause of action. Under the facts of this action, however, the Court cannot hold that Defendants are estopped from asserting that Plaintiffs' first cause of action is time-barred.

To prove that the United States is equitably estopped either from asserting title, or defending against a quiet title action, in the context of a public land case and by means of a motion to dismiss or a motion for summary judgment, the inquiry is whether there are genuine issues of material fact regarding the following elements of estoppel:

1. Whether the party to be estopped knew the facts;

2. Whether the party to be estopped intended or could justifiably be perceived as intending its conduct to induce reliance;

3. Whether the party asserting the estoppel was ignorant of the facts;

4. Whether the party asserting estoppel relied upon the government's conduct; and

5. Whether the government engaged in affirmative misconduct. *United States v. Nez Perce County, Idaho*, 553 F.Supp. 187, 192 (Id. 1982), citing *United States v. Ruby Co.*, 588 F.2d 697 (9th Cir.1978), *cert. den.*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).

Moreover, in the context of a quiet title action, "even if the [private] landowners had proven all the elements necessary for estoppel, they would additionally need to demonstrate such equities which, on balance, outweigh those inherent equitable considerations which the government asserts as the constitutional trustee on behalf of all the people." *Ruby*, cited *supra*, at 705.[1] Under the facts of this action, Plaintiffs have failed to raise a genuine issue of fact as to the elements required to raise the issue of equitable estoppel. Consequently, the Court cannot find that Defendants are estopped from demanding that Plaintiffs demonstrate that their action is timely.

■ In their "Motion for Summary Judgment on Amended First Cause of Action" (# 54), Plaintiffs make the argument that due to the discrepancy between the gross acreage of the Property as determined by the 1881 and the 1939 surveys, 43 U.S.C. § 772 (the Bona Fide Rights Act),[2] requires

---

**1.** In *Ruby* cited *supra*, the Ninth Circuit elaborated on the equitable considerations inherent in a quiet title action:

> It could be argued that there are some broad principles of equity which might assist the plight of the landowners in this case. But we have found no case which would allow the application of estoppel when there has been a failure of proof as to the required elements. *Indeed, the equitable discretion seems to cut only in the other direction.* That is, the court can refuse to apply the doctrine when equity —policy considerations so demand, even though the technical elements may be present. While we recognize that we have held that estoppel may lie in cases involving title to public lands, we are also aware that policy considerations demand that it not be so ap-

plied without compelling reasons. This principle is a corollary to the constitutional precept that public lands are held in trust by the federal government for all of the people. 588 F.2d 697, 704 (9th Cir.1978) (emphasis added) (footnotes and citations omitted).

**2.** The Bona Fide Rights Act, 43 U.S.C. § 772, provides:

> The Secretary of the Interior may, in his discretions, cause to be made ... such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of: Provided, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or

the Court to enter judgment in favor of Plaintiffs as a matter of law.

Plaintiffs' assertion notwithstanding, the Quiet Title Act, 28 U.S.C. § 2409a *et seq.*, applies to all boundary disputes with the United States. In *Fadem v. United States*, 791 F.2d 1381, 1382 (9th Cir.1986), the Ninth Circuit followed *Block v. North Dakota*, cited *supra*, in which the Supreme Court held that the Bona Fide Rights Act did not create an express or implied cause of action for declaratory or monetary relief against the United States in connection with a dispute over boundaries or private property which is adjacent to federal lands, even if the dispute arises from an allegedly improper government survey.[3]

■ Defendant's Motion for Summary Judgment on Plaintiffs' first cause of action (# 69), as well as Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (# 82), is based on the well-documented contention that Plaintiffs or Plaintiffs' predecessors in interest knew *or should have known* of the 1939 resurvey which, while not modifying the boundaries of the Property as originally determined by the 1881 plat survey, established the proper map of the Property so as to reflect the true conditions on the ground as originally described in 1882. In keeping with the findings of fact, *supra*, the Court must conclude that Plaintiff knew or should have known of the 1939 resurvey at the time the Property was purchased, nearly 22 years prior to the filing of this action.

The arguments advanced by Plaintiffs in an attempt to avoid the Quiet Title Act's statute of limitations are unpersuasive. Plaintiffs rely on the fact that Defendant's Answer to Amended Complaint and Counterclaim (# 6) was filed January 12, 1987, and emphasize that the Court's judgment on Defendant's counterclaim for trespass would necessarily include a determination as to the proper boundary between the Property and the surrounding National Forest. Plaintiffs assert that Defendant's counterclaim for trespass constitutes, in fact, a quiet title action by Defendant against Plaintiffs, thereby alchemizing Plaintiffs into defendants in a quiet title action filed by Defendants on January 12, 1987.

Were the Court to accept Plaintiffs' line of argument, Plaintiffs' first amended cause of action would be "piggybacked" upon Defendant's counterclaim, thereby skirting the applicable statute of limitations. While the proper boundary is an issue to be resolved in the adjudication of Defendant's counterclaim for trespass, there are also factual and legal issues subsumed therein which are independent from Plaintiffs' first amended cause of action to quiet title.[4]

While the point is rendered moot by the bar of the statute of limitations, Plaintiffs are correct in asserting that the actual location of a disputed boundary line is a question of fact. Nevertheless, the Court has made a finding of fact that the 1939 resurvey correctly reestablished the corners of Tract 42 in the position determined by the original 1881 survey. The finding is based on evidence that the 1939 resurvey

---

owner of lands affected by such resurvey or retracement.

3. In *Block,* the State of North Dakota brought suit against federal officials to resolve a dispute as to the ownership of land in a riverbed. In an attempt to avoid application of the Quiet Title Act's twelve year statute of limitations, 28 U.S.C. § 2409a(f), North Dakota argued that the Act's remedy is not exclusive, and thus the suit could be maintained on grounds other than the Act. The Supreme Court disagreed, and held "that Congress intended the [Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block,* at 286, 103 S.Ct. 1811, quoted in *Fadem,* at 791 F.2d 1382.

4. Under circumstances similar to this action, in *McIntyre v. United States,* 789 F.2d 1408 (9th Cir.1986), the Ninth Circuit upheld the district court's dismissal of the plaintiff/appellant's quiet title action and entry of a Fed.R.Civ.Pro. 54(b) partial final judgment, while the government/appellee's counterclaim for trespass was not decided and remained before the court. Opining on behalf of the panel, Circuit Judge Wallace declined to reverse the district court's determination that the quiet title claim and trespass counterclaim were multiple claims within the meaning of Rule 54(b) because the counterclaim would require proof of different facts than would the quiet title claim.

retraced the lines, correlating to the calls and bearings to unchanging topographic features. Consequently, Plaintiffs have failed to establish a material issue of fact that the 1939 resurvey established the corrected boundary line between the Property and the surrounding National Forest.

In addition, as noted *supra,* the Court has determined that the 1939 resurvey utilized the original notes and plats and applied the proper rules of survey to retrace and reestablish the original 1881 survey, and therefore that the Bona Fide Rights Act provides no relief to Plaintiffs.

Plaintiffs argue, however, that the reestablished boundary line impairs their rights because it reduces the total acreage conveyed by the original patent from the United States. Plaintiffs assert that the acreage described in the original patents should control, rather than the legal description and the reestablished corners on the ground since 1939. Finally, Plaintiffs make the somewhat amorphous argument that, in spite of the applicable statute of limitations, equity should intervene on their behalf.

As a matter of law, however, Plaintiffs are entitled to no relief. Precisely this scenario was presented before the Tenth Circuit in *Sweeten v. U.S. Dept. of Agr. Forest Service,* 684 F.2d 679, 682 (10th Cir.1982), which affirmed the Utah District Court's acceptance of a government resurvey as establishing the correct boundary line between private land and forest service land:

> It is well settled, however, that in the case of a conflict between elements of a land description, the least persuasive type of description is that of the acreage conveyed. *Clark on Surveying and Boundaries* § 308, at 382 (Grimes ed. 1959): C. Brown, *Boundary Control*

*and Legal Principles,* § 4.28, at 142 (2d ed. 1969). The notes, lines and descriptions in an accepted survey are part of the land patent. *United States v. Reimann,* 504 F.2d 135, 140 (10th Cir.1974). Using original surveyors' notes and reports, the subsequent government surveyors retraced and remonumented the original ... survey. The court did not err in accepting the resurvey as correct rather than relying on the acreage stated in the patent.... Therefore, the proviso of 43 U.S.C. § 772, forbidding impairment of bona fide rights by government resurveys, is inapplicable in this case.[5]

In sum, Defendant's Motion for Summary Judgment (# 69) is granted, and Plaintiffs' Motion for Summary Judgment (# 54) is denied.

## SECOND CAUSE OF ACTION: EASEMENT FOR INGRESS, EGRESS

Plaintiffs request a declaration that they have a 50 foot easement across National Forest land for ingress and egress to the Property, and for an easement to connect the two noncontiguous tracts of the Property. Defendant contends that Plaintiffs' second cause of action is barred by the statute of limitations contained in the Quiet Title Act. In addition, Defendant contends that Plaintiffs are unable to establish the existence and ownership of a right-of-way pursuant to 43 U.S.C. § 932 (repealed 1976), and if such a right-of-way is established, it continues through the Property and is therefore open to the public.

■ The statute at issue in Plaintiffs' second cause of action, 43 U.S.C. § 932, was enacted by Congress in 1866 as Revised Statute 2477, and was repealed in 1976.[6] Section 2477 provided as follows: "The right of way for the construction of

**5.** The Tenth Circuit also rejected the private land owner/appellant's claim that the government was equitably estopped to deny that a fence constructed by the private land owner constituted the true boundary. Citing the Ninth Circuit's decision in *Ruby Co.,* discussed *supra,* the court held that to establish estoppel against the government in an action concerning boundaries of land originally granted in a federal land patent, in addition to establishing the traditional

elements of estoppel, the appellants bore the burden of showing affirmative misconduct by the government or its agents.

**6.** 43 U.S.C. § 932 was repealed by the Act of October 21, 1976, Pub.L.No. 94–579, Title VII, ¶ 706(a), 90 Stat. 2793. However, all rights of way existing on the date of repeal were expressly preserved. 43 U.S.C. § 1769(a).

highways over public lands, not reserved for public uses, is hereby granted." Under R.S. 2477, a right of way could be established by public use under terms provided by state law. *Sierra Club v. Hodel,* 675 F.Supp. 594, 604 (10th Cir.1987), citing *inter alia, United States v. 9,947.71 acres of Land,* 220 F.Supp. 328 (D.Nev.1963). The builder of such a highway was not required to apply for a permit, and no action by public authorities was required. *Id.,* citing *inter alia, Wilderness Soc'y v. Morton,* 479 F.2d 842, 882 (D.C.Cir.1973).

■ Any doubt as to the extent of the grant must be resolved in the government's favor. *Humbolt County v. United States,* 684 F.2d 1276, 1280 (9th Cir.1982), citing *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 617, 98 S.Ct. 2002, 2009, 56 L.Ed.2d 570 (1978). In *Humbolt County,* cited *supra,* the Ninth Circuit noted that the crucial language of section 932 is the phrase "public lands." "Such lands are those subject to sale or other disposal under general laws, excluding those to which any claims or rights of others have attached." *Id.,* at 1281, citing *Columbia Basin Land Protection Ass'n v. Schlesinger,* 643 F.2d 585, 602 (9th Cir.1981). The applicable Nevada law provides for a comparable definition of public lands, including a specific exclusion of national forests.[7]

■ The Court finds as a matter of fact that the Property lost its public character between 1892 and 1897, when it was acquired by the State of Nevada in quarter section parcels. The area surrounding the Property lost its public character in 1906, when the National Forest was established. In order to establish the right to maintain the highway without an application or special use permit, therefore, Plaintiffs must demonstrate that, as a matter of fact, the

road transversing the National Forest to and through the Property was established prior to 1906. Plaintiffs have failed to do so.

For its part, however, Defendant has failed to adduce any evidence which indicates that such road was established subsequent to 1906. Were this the case, then the road would have been constructed over lands reserved for public use, and an application and special use permit would be required. 16 U.S.C. § 3210(a); 36 C.F.R. §§ 212.8, 212.10, 251.53, 251.54, 251.57, 261.10. Neither party, therefore, is entitled to summary judgment on Plaintiffs' second cause of action, pending resolution of this seminal issue of fact.[8]

### THIRD CAUSE OF ACTION (EASEMENT FOR WATERLINES)

■ Plaintiffs contend that they possess a vested right of way for the establishment and maintenance of waterlines buried beneath the National Forest land separating the two non-contiguous tracts of the Property. Plaintiffs assert that a special use permit is unnecessary and, if accepted or required, such permit may jeopardize their legal position due to their vested Nevada water rights. Defendant contends that Plaintiffs' third cause of action is barred by the statute of limitations, and that Plaintiffs are unable to prove any vested right to water which runs across National Forest land without a Special Use Permit.

Plaintiffs rely on 43 U.S.C. § 661, which provides for a right of way for the construction of ditches and canals across public lands, provided that the private owner's rights to appropriate water flowing across such public lands "have vested and accrued, and the same are recognized and

---

7. Nev.Rev.Stat. 408.078 provides in pertinent part:

"Public Lands" means all lands within the exterior boundaries of the State of Nevada *except* lands:
1. To which title is held by any private person or entity;
2. To which title is held by the State of Nevada, and of its local governments or the University of Nevada System;

3. Which are located within congressionally authorized national parks, monuments, *national forests* or wildlife refuges,....
(Emphasis added.)

8. The Court rejects, as a matter of law, Plaintiffs' argument that they are entitled to an easement by necessity or by implication against Defendant regarding ingress and egree to and from the Property. *See* Defendant's discussion, #83, at 9–10.

acknowledged by the local customs, law," of the state in which the property is situated.

As the appropriator of water, Plaintiffs bear the burden of proving that at the time of their (or their predecessors in interest) appropriation, the land on which the water was appropriated was vacant and unappropriated. *Wendler v. Woodward,* 161 P.1043 (Wash.1916). Plaintiffs have offered no evidence to this effect. While Defendant has not offered evidence disproving the existence of vested water rights under Nevada law, Defendant cites 43 U.S.C. § 1761, which authorizes the grant or renewal of rights of way through National Forest lands for, *inter alia,* ditches, flumes, pipelines, and the like, subject, however, to the prior government approval.[9]

Since Plaintiffs have failed to prove, as a matter of fact, that upon their purchase of the Property, water rights appurtenant thereto had vested under Nevada law, this issue of fact precludes summary judgment in favor of Plaintiffs.

Accordingly, Plaintiffs Motion for Summary Judgment for the Third Cause of Action (# 52) is denied.

## FOURTH CAUSE OF ACTION (CLOUD ON TITLE)

Plaintiffs pray the Court for a declaration to cancel the Buol Deed, which grants the United States a right-of-way across the Property. According to Plaintiffs, the right-of-way was never exercised, and is therefore extinguished pursuant to the reversionary clause contained in the Buol Deed. Defendant asserts that Plaintiffs cannot prove that the reversionary

clause has been triggered, and that Defendant and the public are therefore entitled to a right-of-way through the Property.

In their Motion for Summary Judgment on the Fourth Cause of Action (# 50A), Plaintiffs seeks a declaration from the Court that the Buol Deed's grant of a right-of-way to the government is null and void. Plaintiffs acknowledge that Lester G. Adams received actual notice of Defendant's claim of a right-of-way under the Buol Deed when he received the Forest Service Letter on November 3, 1973. Plaintiffs attempt to avoid the bar of limitations contained in the Quiet Title Act by asserting that Adams did not possess actual knowledge of the reversionary clause contained within the Buol Deed until August 20, 1976.

Defendant, however, in its Motion for Summary Judgment (# 68), present facts that establish that the statute of limitations contained in the Quiet Title Act bars Plaintiffs' fourth cause of action as a matter of law. Plaintiffs do not dispute the fact that when Lester Adams consulted an attorney immediately following his receipt of the Forest Service Letter, the attorney advised him to "sit on it," even as the attorney indicated that a certified copy of the complete recorded Buol Deed should be obtained. That Plaintiffs' attorney delayed doing so until August 1976 does not toll the statute of limitations. Although the reversionary clause contained in the Buol Deed was not included in the abstract copy enclosed in the Forest Service Letter, the abstract sufficiently apprised Plaintiff Lester Adams of Defendant's claim to a right-of-way as a matter of law.[10]

---

**9.** 43 § 1761(b)(1) provides *in toto:*
The Secretary concerned shall require, prior to granting, issuing, or renewing a right-of-way, that the applicant submit and disclose those plans, contracts, agreements, or other information reasonably related to the use, or intended use, of the right-of-way, including its effect on competition, which he deems necessary to a determination, in accordance with the provisions of this Act, as to whether a right-of-way shall be granted, issued, or renewed and the terms and conditions which should be included in the right-of-way.

**10.** Plaintiffs' bald allegations of a government conspiracy to deceive and defraud them are unfounded in fact, and as a matter of law. Indeed, the Court notes the decision in *Lavin v. Marsh,* 644 F.2d 1378 (9th Cir.1981), in which the Ninth Circuit reaffirmed the principle that a factor in determining whether affirmative misconduct was present is whether the citizen acted diligently to protect his own interests. Applying those principles to the facts of this action, it is apparent that Plaintiffs did not act with adequate diligence to protect their own interests following their notification by Defendant of the

It is well established that "[28 U.S.C.] Section 2409a does not require that the plaintiff have knowledge of the full contours of the Government's claim before the action accrues. Rather, all that is necessary is a reasonable awareness that the Government claims some interest adverse to the Plaintiff. Even where the Government's interest in a plaintiff's property is based on a null deed, such governmental interest, even without legal title, constitutes a cloud on plaintiff's title sufficient to render the notice provisions of section 2409a(f) satisfied." *D.C. Transit System, Inc. v. United States*, 531 F.Supp. 808, 811 (D.D.C.1982), citing *inter alia, Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980); *Peterson v. Morton*, 465 F.Supp. 986, 996 (D.Nev.1979).[11]

▓ Because the Quiet Title Act limits the sovereign immunity of the United States, it must be interpreted according to federal law. *Amoco Production Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir.1980), citing *inter alia, United States v. Standard Oil Co.*, 332 U.S. 301, 309–10, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947). Federal courts, however, may properly look to state law as an aid in determining the application of statutory language to specific facts. *Id.*, citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). More specific to this action, it is also well

established that "questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located." *Id.*, citing *inter alia, Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79, 97 S.Ct. 582, 590–91, 50 L.Ed.2d 550 (1977).

▓ Hence, the Court must conclude that one of the conditions which will satisfy the "should have known" clause of § 2409a(f) and trigger the bar of limitations is constructive notice under the applicable Nevada state recording statute. Pursuant to Nevada Revised Statutes ("NRS") 111.320 (Filing of conveyances or other instruments is notice to all persons: Effect on subsequent purchasers and mortgagees), Plaintiffs were imputed with constructive notice of the United States claim under the Buol Deed as of the date of their purchase of the Property.[12]

While it is not entirely clear from the record whether or not Defendant's claim under the Buol Deed was, in fact, reverted (there is the possibility of a 10–year hiatus), this is irrelevant to the Court's determination that Plaintiffs' fourth cause of action is time-barred. The Court must follow the Ninth Circuit's lead in *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984), in which the Nevada District Court's grant of summary judgment in a quiet title action, based on the statute of limitations,

---

Buol Deed. Plaintiffs cannot render the Buol Deed void due to the enclosure of an abstract copy thereof (instead of a certified copy) with the Forest Service Letter. *See also* the Court discussion regarding the unavailability of asserting equitable estoppel against Defendant in this action, *supra.*

**11.** In *Chesney v. United States*, 632 F.Supp. 867, 870 (D.Ariz.1985), the Arizona District Court found, as a matter of law, that plaintiff had sufficient knowledge of the government's claim, and granted summary judgment in favor of the government: "The standard of knowledge, 'knew or should have known', does not permit a party to wait indefinitely to quiet title as against the government. The United States may be sued only if it has consented to be sued. 28 U.S.C. § 2409a constitutes such a consent, but as such it must be strictly construed. *Nevada v. United States*, 731 F.2d 633, 634 (9th Cir.1984). The government has not consented to defend

against stale claims against its title. Given the knowledge that [plaintiff] undisputably had about the title to the disputed land, he could not bury his head in the sand ... waiting for an adverse party to make a dramatic assertion of a claim. It was incumbent upon him to make some sort of inquiry or take some sort of action to establish his right to the disputed land, and where a claim by the United States is concerned, it is incumbent upon him to do so within 12 years of the time he because aware of the claim."

**12.** NRS 111.320 provides *in toto:* "Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this chapter, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice."

was affirmed on appeal. The Ninth Circuit panel commented as follows:

> Other arguments advanced by Nevada in its attempt to avoid that limitations bar by challenging the underlying legality of the federal claim are unpersuasive. These arguments are unavailing because the crucial issue in our statute of limitations inquiry is whether Nevada had *notice* of the federal claim, not whether the claim itself is *valid or invalid. Park County Montana v. U.S.,* 626 F.2d 718, 721 (9th Cir.1980), *cert. den.* 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981); *Grosz v. Andrus,* 556 F.2d 972, 975 (9th Cir.1977). (Emphasis added.)

In sum, the parties do not dispute the fact that Lester Adams had notice of Defendant's claim under the Buol Deed as of November 3, 1973. That was some 12 years and seven months prior to his filing of his first Complaint on June 6, 1986. Moreover, as a matter of state law, Plaintiffs are imputed with constructive notice of the contents of the Buol Deed as of the date of their purchase of the Property. Their refusal to accept compensation from the title company which failed to include the Buol Deed in the chain of title cannot render the United States liable for title claims barred by the statute of limitations.

Accordingly, Plaintiffs' Motion for Summary Judgment (# 50) is denied, and Defendant's Motion for Summary Judgment (# 68) is granted.

## DEFENDANT'S COUNTERCLAIM

Defendant's Counterclaim charges Plaintiffs with the use and occupation of National Forest land without a Special Use Permit or other authorization as required pursuant to the Code of Federal Regulations, 36 C.F.R. § 251.50 *et seq.* Plaintiffs' allegedly unauthorized uses include, the operation of two water pipelines crossing National Forest land between Tracts 41 and 42 of the Property (Count I); the construction of a fuel brake road on National Forest land (Count II); the relocation of Forest Development Road No. 20071 (Count III); the relocation of the North Canyon Road (Count IV); and the construction of a drainage ditch on National Forest land (Count V).

Given the existence of genuine issues of material fact regarding the establishment of rights of way for ingress and egress to and from the Property, as well as for rights of way for the appropriation and transport of water across National Forest lands, the Court must deny Defendant's Motion for Summary Judgment (Counts I-V of Counterclaim) (# 67), pending the resolution of these issues of fact. *See* discussion on Plaintiffs' second and third causes of action, *supra.*

## CONCLUSION

IT IS THEREFORE ORDERED AS FOLLOWS:

Plaintiffs' Motion for Summary Judgment (First Cause of Action) (# 54) is denied, and Defendant's Motion for Summary Judgment (First Cause of Action) (# 69) is granted;

Plaintiffs' Motion for Summary Judgment (Second Cause of Action) (# 51) is denied, and Defendant's Cross Motion for Summary Judgment (# 83) is denied;

Plaintiffs' Motion for Summary Judgment (Third Cause of Action) (# 52) is denied;

Plaintiffs' Motion for Summary Judgment (Fourth Cause of Action) (# 50A) is denied, and Defendant's Motion for Summary Judgment (Fourth Cause of Action) (# 68) is granted; and

Defendant's Motion for Summary Judgment (Counts I-V of Counterclaim) (# 67) is denied.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count I of Plaintiffs' Amended Complaint (# 48) is denied as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Counts I, II, III and IV of Plaintiffs' Amended Complaint (# 49) is denied.