**Lester G. ADAMS and Jean D. Adams, individually and as Trustees of the 1984 Living Trust, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 99–15823.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 2001

Filed June 25, 2001

Steven Wolfe Thompson of Wolfe Thompson LLP, Las Vegas, Nevada, for the plaintiffs-appellants.

Lois J. Schiffer, Assistant Attorney General, Kathryn E. Landreth, United States Attorney, Blaine T. Welsh, Assistant United States Attorney, and Donna S. Fitzgerald, William B. Lazarus, and Elizabeth A. Peterson of the Environment and Natural Resources Division of the United States Department of Justice, Washington D.C., for the defendant-appellee.

Before: O'SCANNLAIN and W. FLETCHER, Circuit Judges, and KELLEHER,[1] District Judge.

1. The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

KELLEHER, District Judge:

Plaintiffs Lester G. and Jean D. Adams (the "Adamses") bring this second appeal to determine the scope of their rights as inholders, owners of private property completely surrounded by federally owned National Forest System lands. In the first appeal, we remanded the matter to the district court to determine the rights and responsibilities of both parties to ensure access and stewardship of public land and to fashion an appropriate injunctive order. *See Adams v. United States,* 3 F.3d 1254, 1259–60 (9th Cir.1993) (hereinafter *"Adams I "*). We have before us the question of whether the district court erred in ordering on remand that the Plaintiffs must apply for National Forest Service permits, that the United States be entitled to a right of way across Plaintiffs' land, and that a survey be stricken from the county records. Our jurisdiction arises pursuant to 28 U.S.C. § 1291.

## I.

The facts as follow were found by the district court in *Adams v. United States,* 687 F.Supp. 1479 (D.Nev.1988), in its Order entered October 18, 1989, and on remand in its Amended Order entered February 8, 1999. Because many of the facts were set forth in *Adams I,* what follows is a truncated version containing the relevant facts for this appeal.

The United States acquired the land that would later become the Adamses' property in 1848 after the Mexican–American War. In 1892, the United States transferred this land to the State of Nevada; Nevada subsequently sold the land to private parties. On November 5, 1906, President Theodore Roosevelt reserved the land surrounding the privately owned property for what has become the Toiyabe National Forest.

In 1964, the Adamses[2] purchased the property from a prior private owner based upon the boundaries established by a 1939 survey.[3] The Adamses' property consists of two tracts of land; the larger western tract is separated from the smaller eastern tract by National Forest land.

Frank Buol ("Buol"), a predecessor in title to Plaintiffs, granted the United States a deed (the "Buol Deed") evidencing a right of way fifty feet wide across the property (the "Buol right of way").[4] This deed was recorded by the Clark County, Nevada Recorder's Office on October 5, 1937. The Adamses were advised of the claim of the United States to the Buol right of way by a letter dated November 1, 1973.

---

2. Lester G. Adams and Jean D. Adams transferred the property to Lester G. Adams and Jean D. Adams, Trustees for the Lester G. Adams and Jean D. Adams 1984 Living Trust by a Deed dated October 23, 1984, which was recorded December 4, 1984.

3. In 1881, Deputy Surveyor Theo. Binge ("Binge") performed the original survey on Township 19 South, Range 56 East, which would later become the Adamses' land. Binge's survey served as the basis for a strictly dependent resurvey performed by Carl S. Swanholm ("Swanholm") and accepted by the General Land Office in 1939 (the "1939 Survey").

4. The Buol Deed grants an easement and right of way: "for the construction, maintenance, and full, free and quiet use and enjoyment by the United States of America for any and all purposes by them desired or deemed necessary or beneficial and by the general public as a highway, being fifty feet in width and traversing the above described premises.... This grant to be effective as long as said easement shall be actually used for any of the purposes above specified ... and all rights hereunder granted shall revert to the owner of the land when said use shall have been abandoned and discontinued for a term of ten years or longer."

Without Forest Service authorization, the Adamses have made numerous changes to National Forest land. Beginning in 1969, the Forest Service has repeatedly notified the Adamses that the Service is aware of the Adamses' unauthorized activities, and requested that the Adamses obtain permits for any activities on Forest Service land.[5] Some areas of National Forest land that have been damaged by the Adamses' activities are accessible only by crossing the Adamses' property. Because the Adamses have denied the Forest Service access across their land, the Service has been unable to perform reclamation work on the damaged areas.

Clark Canyon Road[6] originates in the National Forest to the west of the Adamses' land, crosses the Adamses' larger western tract, proceeds through the National Forest, and then enters the Adamses' smaller eastern tract where it terminates. Without Forest Service authorization, the Adamses widened and graded the entirety of Clark Canyon Road. This activity "effectively turned the road into a ditch," causing "erosion and damage to the road." *Adams v. United States,* CV–S–86–548–LDG, Sept. 20, 1991. In 1987, the Forest Service performed some reclamation work on the damaged portion of the road to the west of the Adamses' property. However, the Forest Service has not yet been able to perform reclamation work on the portion of the Clark Canyon Road that runs across National Forest land between the Adamses' two tracts of land, because the Service can access that portion of the road only by crossing the Adamses' land.

The Forest Service also plans to reclaim two other areas of the National Forest damaged by the Adamses' activities. The Adamses have built a switchback—a zigzag road traversing a mountainous region—entirely on National Forest land (the "North Canyon Switchback"). The Forest Service plans to reclaim the North Canyon Switchback in its entirety. The Adamses have also constructed a fuel break road (the "Fuel Break Road") along the southern boundary of their western tract which crosses onto National Forest land in three areas. The Forest Service plans to reclaim these three segments of the Fuel Break Road, to re-fill the road cut, and re-vegetate the reclaimed slopes. The Forest Service can reach the Switchback and the Fuel Break Road only by crossing the Adamses' land.

In 1995, the Forest Service discovered that the Adamses had made additional unauthorized changes to the National Forest land lying between the Adamses' western and eastern tracts which included the construction of a new road segment and a ditch, alteration of the drainage channel, installation of a plastic culvert approximately one hundred feet long, and destruction of vegetation.

## II.

In 1986, the Adamses initiated this action, seeking to quiet title based upon an alleged discrepancy between the boundaries of their property as shown in the 1939 Survey and on a 1881 plat map, and seeking to quiet title in an easement for access to their land. The United States counterclaimed, asserting that the Adamses had trespassed on National Forest System land, and seeking damages and an

---

**5.** The Forest Service sent letters to Mr. Adams in 1969, 1970, 1973 (three letters), 1975, 1976 (two letters), 1977, 1979, 1980 (two letters), 1981 (two letters), and 1984.

**6.** Clark Canyon Road is denominated by the Forest Service as Forest Development Road ("FDR") 20071.

injunction barring the Adamses from further trespasses.

Both parties moved for summary judgment on all claims. The district court held that the Adamses' first cause of action, a quiet title action regarding their boundaries, was barred by the statute of limitations in the Quiet Title Act, 28 U.S.C. § 2409a(g). *See Adams v. United States*, 687 F.Supp. at 1486–89. It held that the Adamses' fourth cause of action, for a declaration to cancel the Buol Deed, was also time-barred by the statute of limitations in the Quiet Title Act. *See id.* at 1491–93. The court denied summary judgment on the easement and trespass issues. *See id.* at 1489–91, 1493.

After a bench trial, the district court found that the Adamses were not entitled to an easement over Clark Canyon Road, and that most of the Adamses' work done on National Forest land constituted acts of trespass, for which it awarded the United States damages of $11,000. The court enjoined the Adamses from further use or occupancy of National Forest lands without first obtaining the appropriate permits from the National Forest Service.

In *Adams I*, we held that the lower court's injunction was too broad because "the Clark Canyon Road is open to the public, including the Adamses, without a permit." 3 F.3d at 1257. We vacated the lower court's injunction, and remanded to permit the district court to issue a modified injunction, considering the following factors:

(1) The Adamses have a nonexclusive easement over the Clark Canyon Road but not the North Canyon Road or the North Canyon Switchback.
(2) The Forest Service must provide reasonable access to the Adamses property via the Clark Canyon Road at all times. Reasonable access for the general public to hunt, fish, or camp may be unreasonable when applied to the Adamses who need year-round access sufficient to operate a ranch.
(3) The Adamses may not prevent the Forest Service or any other member of the public from using the portion of Clark Canyon Road that lies on Forest Service land.

*Id.* at 1259–1260. We further held that the Adamses "must comply with reasonable Forest Service rules and regulations with regard to maintenance or road improvement." *Id.* at 1260. On remand, we directed the district court to "determine the rights and responsibilities of both parties to ensure both access and stewardship of public land" and fashion an appropriate injunction. *Id.*

On remand, the district court held that, to the extent that the general public can travel the Clark Canyon Road, the Adamses could also do so without obtaining special use permits. However, the court ordered that, for all of the Adamses' uses exceeding those of the general public, such as snow removal and road maintenance, the Adamses must apply for special use permits. The court further held that the Forest Service's proposed permits were reasonable. The district court also held that the Forest Service was entitled to a right of way to perform reclamation work, either via the Buol right of way or an alternative right of way. Finally, the court ordered a survey prepared by the Adamses and filed with the County Recorder stricken from the county records. This appeal followed.

## III.

■ The panel reviews issues of fact for clear error, *see Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000), and reviews issues of law *de novo, see Tierney*

*v. Kupers,* 128 F.3d 1310, 1311 (9th Cir. 1997).

## IV.

The Organic Act of 1897 establishes the Forest System. 16 U.S.C. §§ 473–482, 551. The Forest Service manages Forest System lands pursuant to various statutes, including the Alaska National Interest Lands Conservation Act ("ANILCA"),[7] the Federal Land Policy and Management Act ("FLPMA"),[8] the National Forest Roads and Trails Act ("NFRTA"), and the special use permit regulations contained in 36 C.F.R. section 251.

In 1980, Congress enacted § 1323(a) of ANILCA. Section 1323(a) mandates that the Secretary of Agriculture "provide such access to non-federally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment" of the private land. 16 U.S.C. § 3210(a). However, § 1323(a) explicitly conditions access on the inholder's compliance with the "rules and regulations applicable to ingress and egress to or from the National Forest System." *Id.*

The "rules and regulations" referred to by § 1323(a) are those contained in 36 C.F.R. section 251 subpart B. These regulations provide that, "as appropriate," inholders will be entitled to access "adequate to secure them the reasonable use and enjoyment of their land." 36 C.F.R. § 251.110(c). Adequate access is defined as "a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with similarly situated non-Federal land." 36 C.F.R. § 251.111. Before

issuing any access authorization, an officer must ensure that "[t]he route is so located and constructed as to minimize adverse impacts on soils, fish and wildlife, scenic, cultural, threatened and endangered species, and other values of the Federal land." 36 C.F.R. § 251.114(f)(2).

Inholders who require surface-disturbing access or use greater than that afforded the general public must "apply for and receive a special-use or road-use authorization." 36 C.F.R. § 251.110(d). A special use authorization is "a permit, term permit, lease, or easement which allows occupancy, use, rights, or privileges of National Forest System land." 36 C.F.R. § 251.51. Inholders must pay "an appropriate fee" which is based on the value of the use of the land and can be waived in certain circumstances. *See* 36 C.F.R. § 251.114(b) and § 251.57.

Special use authorizations must contain a clause stating how long authorization will last and whether it is renewable. *See* 36 C.F.R. § 251.56(b). Generally, if the permit lasts for more than thirty years, it must provide for revision of the terms at regular intervals to accommodate changed circumstances. *See id.* Most special use permits can be transferred upon application and approval of the authorized officer. *See* 36 C.F.R. § 251.59. A special use permit may be terminated, revoked or suspended; such decisions are subject to appellate review within the Department. *See* 36 C.F.R. § 251.60.

As well as setting forth the requirements for special use authorizations, these regulations state that inholders may be required to provide the United States with right of way across their property. In-

---

7. *See Montana Wilderness Ass'n v. United States Forest Serv.,* 655 F.2d 951, 957 (9th Cir.1981) (holding that ANILCA applies nationwide).

8. FLPMA authorizes the Secretary of Agriculture to "grant, issue or renew rights of way over [National Forest] lands." 43 U.S.C. § 1701 (1976).

holders may be required to provide a reciprocal grant of access to the United States across their private land "where such reciprocal right is deemed by the authorized officer to be necessary for the management of adjacent Federal land." 36 C.F.R. § 251.114(c). In such a case, however, the landowner must receive the fair market value of the right of way granted to the United States, which can then be offset against the value of the access granted by the United States. *See id.*

Under the NFRTA, an inholder who uses a forest road may be required to maintain the road in a satisfactory condition. *See* 36 C.F.R. §§ 212(c), 212.7(d). Maintenance includes "[t]he upkeep of the entire forest development transportation facility including surface and shoulders, parking and side areas, structures, and such traffic-control devices as are necessary for its safe and efficient utilization." 36 C.F.R. § 212.1(i). Moreover, the NFRTA provides that the Forest Service may require an inholder to grant a reciprocal benefit, such as a right of way, as needed by the United States. *See* 36 C.F.R. § 212.10(a).

### V.

We first address the Adamses' argument that the district court erred in ordering them to apply for a permit for certain uses of National Forest System land.

■ On remand, the district court held that, pursuant to *Adams I,* the Adamses had an easement to travel Clark Canyon Road to the extent that the road is traveled by the general public. However, for any use beyond that or for access that would cause surface-disturbing activities— for example, if the Adamses wished to maintain the road for passage by passenger vehicles, remove snow, or make emergency repairs—the court held that the

Adamses must apply for a special use authorization. As the basis for its holding, the court cited FLPMA, 16 U.S.C. § 3210(a) of ANILCA, and the special use authorization regulations at 36 C.F.R. §§ 251.110, 212.8(b), 251.114(a)-(f), and 251.57.

■ The district court was correct in so holding. Despite the Adamses' arguments to the contrary, *Adams I* did not grant them a vested common law easement for access to their property. Rather, *Adams I* clearly stated that the Adamses do not have a common law easement because all common law claims are preempted by ANILCA and FLPMA where, as here, the United States owns the servient estate for the benefit of the public. *See Adams I,* 3 F.3d at 1259. Pursuant to the law of the case doctrine, an appellate court does not reconsider matters resolved on a prior appeal. *See In re Rainbow Magazine, Inc.,* 77 F.3d 278, 281 (9th Cir.1996) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.") (quotations omitted); *Kimball v. Callahan,* 590 F.2d 768, 771 (9th Cir.1979) ("[U]nder the 'law of the case' doctrine one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case.").

■ Moreover, the Adamses' argument that requiring them to apply for a permit or special use authorization effects an unconstitutional taking is unavailing. "A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted. . . . Only when a permit is denied and the effect of

the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred." *United States v. Riverside Bayview Homes,* 474 U.S. 121, 127, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

■ As we stated in *Adams I,* ANILCA commands that the Adamses be provided access to secure their reasonable use and enjoyment of their property. *See* 3 F.3d at 1259. However, the Adamses' exercise of their right of access is not absolute. *See id.* The Constitution grants Congress the authority and responsibility to manage federal land. U.S. Const. Art. IV, § 3, cl. 2. Congress, by statute, has delegated this authority to agencies such as the Forest Service. *See* 3 F.3d at 1259. Therefore, as we held in *Adams I,* the Adamses' access to their property is subject to reasonable regulation by the Forest Service. *Id.* at 1260 ("The Forest Service still has the authority to reasonably regulate the Adamses' easement.").

None of the arguments made by the Adamses in this appeal convince us to reverse our holding in *Adams I.* The Adamses' access rights are subject to reasonable regulation pursuant to the relevant statutes. Thus, the only question left for this Court is whether the district court correctly held that the permitting system proposed by the Forest Service was a reasonable regulation of the Adamses' access. We hold that the permit, in the form proposed by the government and sanctioned by the district court, reasonably regulates the Adamses' access by providing that they must comply with Forest Service regulations if they wish to engage in surface disturbing activities beyond those engaged in by the general public. The Adamses raise various speculative concerns about possible future government misconduct, arguing that the government may arbitrarily cancel a permit. These concerns are not yet ripe. Moreover, the permit itself states that it does not void any rights already vested in the permit holder; thus the Adamses' right of access as provided in *Adams I* is not diminished or voided by the permit.

We therefore hold that the district court did not err in ordering the Adamses to apply for a permit for access to their property that constitutes use of the National Forest System lands beyond the uses made by the general public.

## VI.

We next turn to the Adamses' argument that the district court erred in granting the United States a right of way across the Adamses' property. On remand, the district court ordered that the United States be granted a right of way across the Adamses' property to perform reclamation, either via the Buol right of way, or by a right of way proper under ANILCA.

The Adamses argue that, because they have a vested common law easement by necessity, the district court's order effectuated an unconstitutional taking without compensation and without due process. As discussed in Section VI, we held in *Adams I* that the Adamses do not have a common law easement by necessity pursuant to federal preemption, and we will not reconsider this issue pursuant to the law of the case doctrine.

■ The district court was incorrect in ordering that the United States be entitled to access across the Adamses' property via the Buol right of way. In *Adams v. United States,* the district court granted summary judgment to the government on the Adamses' cause of action regarding the Buol Deed, finding that it was barred by the statute of limitations under the Quiet Title Act. *See* 687 F.Supp. at 1491–93. The United States argues that, in granting

summary judgment to the government on this issue, the district court ruled conclusively that the Adamses may not challenge the United States' claim to the Buol right of way.

■ The government's argument fails because, if an action is barred by the statute of limitations of the Quiet Title Act, "the courts below [have] no jurisdiction to inquire into the merits." *Block v. North Dakota*, 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Because the district court on summary judgment held that the Adamses' fourth cause of action regarding the Buol right of way was time-barred under the Quiet Title Act, the court did not have jurisdiction to reach the merits of the government's claim to a right of access via the Buol right of way. On remand, the district court incorrectly stated that it had "already determined [on summary judgment] that pursuant to the Buol deed the United States has a fifty-foot wide right-of-way traversing the Adamses' property." The district court relied upon that prior determination in granting a right of access to the United States via the Buol right of way on remand; however, no such determination had been made. In fact, the district court held on summary judgment that it would not reach the question of whether the Buol right of way had reverted back to the Adamses because "this [issue] is irrelevant to the court's determination that Plaintiff's fourth cause of action is time barred." 687 F.Supp. at 1492. Indeed, if the district court had determined on summary judgment that the United States had a right of access via the Buol right of way, this would have been an improper inquiry into the merits under *Block*, 461 U.S. at 292, 103 S.Ct. 1811. We hold, therefore, that the district court erred on remand in granting the government access via the Buol right of way.

■ The district court was correct in ordering that the United States was entitled to a right of way pursuant to ANILCA. The court's order properly interpreted and effectuated ANILCA regulations regarding reciprocal right of ways. Section 251.114(c) of ANILCA provides that a landowner may be required to provide a reciprocal right of access to the United States to perform reclamation work. Section 251.114(c) further authorizes the offset of a reciprocal right of way against fees, where the right of way granted to the inholder exceeds the value of the reciprocal rights granted to the Forest Service. The application of fees is governed by §§ 251.114(b) and 251.57, which provide that fees can be reduced or waived when an inholder is providing a benefit to the public or has granted a reciprocal right of access to the Forest Service. Pursuant to these regulations, the district court offset the value of the Forest Service's right of way against the fee the United States might properly have imposed on the Adamses' special use authorization. We hold that the district court did not err in interpreting the regulations as providing the United States with a right of way.

## VII.

We finally address the Adamses' argument that the court erred in ordering a survey stricken from the county records.

Following *Adams I*, the Adamses commissioned a resurvey of their property which was performed by Larry Crow, a certified land surveyor, and recorded with the Clark County Recorder on December 11, 1995 (the "Crow survey"). The Crow survey is based upon a misstatement made in *Adams I* regarding the Culinary Spring, a spring used by the Adamses which is located on National Forest land. In the introductory fact section of *Adams I*, we mistakenly stated that the Culinary Spring

is on the Adamses' land.[9] Because the Crow survey includes the Culinary Spring and the surrounding National Forest land as part of the Adamses' property, it adds approximately 43.34 acres to Adamses' property beyond that shown in the 1939 and 1990 surveys.[10]

On remand, the district court ordered that the Crow survey be stricken and expunged from the Clark County Recorder's Office. The court reasoned that it had previously made a finding of fact on summary judgment that the 1939 Survey correctly established the boundaries of the Adamses' property. *See* Dist. Ct. Amended Order (Feb. 5, 1999) at 13 (citing *Adams v. United States*, 687 F.Supp. 1479, 1488–89 (D.Nev.1988) (finding on summary judgment that "the 1939 resurvey established the corrected boundary line between the [Adamses'] Property and the surrounding National Forest")). Because the Crow survey purports to expand the Adamses' boundaries by 43.34 acres beyond the boundaries shown in the 1939 Survey, the court ordered it stricken as contradictory to its prior findings of fact. The court stated that it had "previously determined that the Adamses' quiet title action disputing the boundary between their land and the Forest Service land was barred by the statute of limitations. As such, the act of recording the resurvey that establishes boundaries significantly different from the previously established boundary is inappropriate." *Id.*

The Adamses argue that, in so ordering, the district court contradicted our opinion in *Adams I* granting them the additional land and exceeded its authority.

■ The Adamses' argument that our opinion granted them the Culinary Spring and the surrounding land is entirely frivolous. The misstatement of fact in the introductory section of *Adams I* was in no way a grant of additional property to the Adamses. We faced no factual issue in *Adams I* as to the location of the Culinary Spring, and therefore could not possibly have found that the spring was on the Adamses' property.

■ The district court was in error in holding that it could strike the Crow survey in order to effectuate its earlier finding of fact on summary judgment that the 1939 resurvey established the Adamses' boundaries. It is true that district courts have the power to enforce their judgments. *See Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1453 (9th Cir.1996). As a preliminary matter, however, "there is no such thing as a finding of fact on summary judgment." *Thompson v. Mahre and Steen*, 110 F.3d 716, 719 (9th Cir.1997). Moreover, the district court did not have jurisdiction on summary judgment to reach the merits of the boundary dispute. The district court granted summary judgment on the ground that the Adamses' first cause of action, a

---

**9.** *See* 3 F.3d at 1256. The Court's misstatement regarding the location of the Culinary Spring occurred within an introductory section; the opinion's focus was upon the Clark Canyon Spring, not the Culinary Spring. In fact, the Court mentioned the Culinary Spring only this single time in its entire opinion. The Government suggests that the Court's misstatement in this regard may be due to the Government's own identical misstatement in its answering brief in the prior appeal.

**10.** As indicated by the affidavit of government surveyor Steven B. Dodds, the Crow survey contains boundaries that are at odds with the 1939 and 1990 surveys. Dodds describes the Crow survey as follows: "[I]n Township 19 South, Range 56 East, MDM, the Record of Survey shows an area, approximately 40.95 acres in size, directly north of Tract 42 containing the culinary spring. A note on the plat states that this parcel was awarded to Mr. Adams by the 9th Circuit Court of Appeals."

quiet title action regarding their boundaries, was barred by the statute of limitations in the Quiet Title Act. *See Adams v. United States*, 687 F.Supp. at 1486–89. Therefore, the district court did not have jurisdiction on summary judgment to find that the 1939 Survey correctly established the boundaries of the Adamses' property.[11] *See Block*, 461 U.S. at 292, 103 S.Ct. 1811. We therefore hold that the district court erred on remand in ordering the Crow survey stricken.

### VIII.

In *Adams I*, we remanded for the district court to craft an injunction under which the Forest Service would provide reasonable access to the Adamses' property and the Adamses would comply with reasonable Forest Service rules and regulations with regard to maintenance or road improvement. In holding that the Adamses must apply for permits for certain uses of the Clark Canyon Road and ordering that the United States has a right of access over the Adamses' property pursuant to ANILCA, the district court properly effectuated our directive.

REVERSED as to the court's order granting a right of way pursuant to the Buol Deed and striking the Crow survey; AFFIRMED as to all other issues.

---

11. Although the court did not make the argument that its trespass judgment provided it authority to strike the Crow survey, this argument would also be unavailing. Following a bench trial, the district court determined that the Adamses were liable for trespass and awarded the United States damages of $11,000. During the damages portion of the trial, the court found that the 1990 dependent resurvey correctly established the National Forest boundaries in T19S, R55E, Sections 1 and 12. Sections 1 and 12 do not include the boundaries contested by the Adamses, namely section 6 which includes the Culinary Spring. Therefore, the court made no finding of fact regarding the contested boundaries following the bench trial.