Kenneth M. BUNYARD and Joan
Bunyard, husband and wife,
Plaintiffs,

v.

UNITED STATES of America, DE-
PARTMENT OF AGRICULTURE,
FOREST SERVICE, Defendant.

No. CV02–0083–PCTJAT.

United States District Court,
D. Arizona.

Feb. 9, 2004.

Timothy W. Barton, Scott Alan Malm, Gust Rosenfeld PLC., Phoenix, AZ, for Plaintiffs.

Sue A. Klein, US Attorney's Office, Phoenix, AZ, for Defendant.

## AMENDED ORDER

TEILBORG, District Judge.

IT IS ORDERED that the Court's Order of February 4, 2004 (Doc. # 45) is amended, effective as of the original date of the Order, to read as follows:

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. # 32) ("Motion") and Defendant's Response to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment (Doc. # 37) ("Cross Motion"). The Court held oral argument on January 26, 2004, and has carefully considered the parties' arguments, motions, responses, and replies. As discussed below, the Court will grant Defendant's Cross Motion in part and deny the Cross Motion in part, and grant Plaintiffs' Motion.

## Background

Plaintiffs Kenneth and Joan Bunyard own five adjoining parcels of land in Navajo County, Arizona. They acquired the first parcel in 1981 and, since that time, have used the "Old Standard Mill Road" to access a nearby public roadway. Plaintiffs' five parcels are bordered on three sides by land owned by the United States of America. Defendant acquired the land through which the Old Standard Mill Road passes in May, 1965. By July of 2001, Defendant had decided to close the Old Standard Mill Road. Plaintiffs brought this suit to quiet title to an easement on the Old Standard Mill Road.

## Discussion

Plaintiffs assert three counts against Defendant for access to the Old Standard Mill Road: (1) Quiet title (prescriptive easement); (2) quiet title (Rev.Stat. § 2477); and (3) quiet title (16 U.S.C. § 3210(a) ("ANILCA")). (*See* Amended Complaint, Doc. # 16 at 2–3.) For ease of reference, the Court's discussion of the competing motions for summary judgment will track the order of Plaintiffs' counts.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is mandated, "... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the

burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

## II. PLAINTIFFS' CLAIM OF PRESCRIPTIVE EASEMENT

■ Plaintiffs argue that if a prescriptive easement was established prior to the acquisition of the land in question by the United States, then Plaintiffs may bring suit to quiet title to such an easement under the Quiet Title Act, 28 U.S.C. § 2409a. (*See* Motion at 5–8.) In response, Defendant asserts that a prescriptive "easement cannot be claimed against the United States ...." (Cross Motion at 3.) Defendant appears to be mistaken. *Cf. Michel v. United States*, 65 F.3d 130, 132 (9th Cir.1995) (finding that Quiet Title Act suit for an easement over roads and trial in national wildlife refuge was not barred by statute of limitations); *see also Kinscherff v. United States*, 586 F.2d 159, 161

(10th Cir.1978) (easements are real property interests subject to quiet title actions).

Both parties acknowledge that, in order to maintain a claim for prescriptive easement, Plaintiffs must demonstrate that the necessary elements for a prescriptive easement "occurred prior to ownership of the property by the United States...." (Cross Motion at 3; Motion at 5.) It also appears to be uncontested by the parties that the existence of such a prescriptive easement must be determined under Arizona law.

■ **A. Prescriptive easements under Arizona law:** "To gain a prescriptive easement, a person must establish that the land in question has actually and visibly been used for ten years, that the use began and continued under a claim of right, and [that] the use was hostile to the title of the true owner of the land." *Paxon v. Glovitz*, 203 Ariz. 63, 50 P.3d 420, 424 (Ariz.App.2002) (citing *Harambasic v. Owens*, 186 Ariz. 159, 920 P.2d 39, 40 (Ariz. App.1996)). "If the use is permissive, it cannot ripen into an easement by prescription because it is neither 'hostile' nor 'adverse' to the owner's title." *Paxson*, 50 P.3d at 424 (citing *Herzog v. Boykin*, 148 Ariz. 131, 713 P.2d 332, 334 (Ariz.App. 1985)). In order for Plaintiffs to prevail on summary judgment, they must "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If Plaintiffs meet that burden, then the burden shifts to Defendant to rebut Plaintiffs' evidence.

■ **Visible and continued use for ten years:** Plaintiffs present evidence in the form of deposition testimony from Mrs. Lorene Petersen that the Old Standard Mill Road has been used since 1929. (Plaintiffs' Statement of Facts ("PSOF") at ¶ 6.)[1] Mrs. Petersen states the road was used by a number of homeowners to ac-

---

1. Throughout the Motion and Plaintiffs' State- ment of Facts, this last name of the deponent

cess their property (PSOF at ¶ 13.) Moreover, Mrs. Petersen indicates that *after* a nearby lumbermill closed in 1936 and neighboring homes were removed between 1936–38, her family continued to use the Old Standard Mill Road in farming operations. (PSOF at ¶ 11; Petersen Deposition at 33–34.) Mrs. Petersen also states that her family used the road openly. (Petersen Deposition at 34.) Lawrence Petersen provides a declaration in which he indicates that he recalls using the Old Standard Mill Road to access his family's property in 1950. (PSOF at ¶ 14.) Mrs. Petersen's daughter recalls the presence of the road in the 1950s. (PSOF at ¶ 15.)

Plaintiffs argue that their evidence shows use of the Old Standard Mill Road "for more than the required ten-year period following 1929." (Motion at 6.) The excerpts from Mrs. Petersen's deposition testimony provided to the Court support the contention that she used the Old Standard Mill Road in 1929 to take the school bus. (Petersen Deposition at 18, 30.) But those same excerpts do not indicate how long Mrs. Petersen continued such use. Similarly, Mrs. Petersen states that she used the road "a lot" to get to homes in the area, but does not reference any time frame for such use. (*Id.* at 20.) Mrs. Petersen also stated that her "father-in-law, even after those houses had moved [1936 to '38] and he farmed, he used that road to get out on when he was going to Pinedale." (*Id.* at 32–33.) But her deposition testimony does not indicate how long her father-in-law's use continued after the houses were moved or clearly state that such use was ongoing before such date. Finally, Plaintiffs present the statement of Mrs. Petersen's nephew, Lawrence Petersen, about using the Old Standard Mill

Road in 1950. (PSOF, Ex. F at ¶ 8.) Mr. Petersen does not, however, indicate that he or his family used the road prior to that trip in 1950.

While Plaintiffs' evidence shows use of the Old Standard Mill Road during a period of more than 10–years, there are gaps in the evidence regarding the nature and frequency of such use. Before deciding whether Plaintiffs' evidence is sufficient for summary judgment, it is necessary to determine the nature and frequency of use required to establish a prescriptive easement.

The nature of use demonstrated by Plaintiffs is sufficient. *See Harambasic,* 920 P.2d at 40 (finding testimony that plaintiff "used the road and had never asked anyone for permission to do so" was sufficient). It does not matter that Plaintiffs have not demonstrated exclusive use of the road:

> To acquire title by adverse possession, a person must demonstrate that he had exclusive possession of the property at issue throughout the ten-year period. The same showing is not required of a person seeking to establish an easement by prescription. A person may establish a prescriptive right even though other people, including the holder of fee title in the servient tenement, use the property in the same way that he does. His use need only be exclusive in the sense that it is based upon a right that he claims as an individual rather than as a member of the general public.

*Ammer v. Arizona Water Co.,* 169 Ariz. 205, 818 P.2d 190, 194 (Ariz.App.1991) (citation omitted).[2]

■ With respect to duration, the use must be " 'continued without effective in-

---

is spelled "Peterson." The underlying depositions, Defendant's pleadings, and the declarations of the deponent's relatives, however, appear to support the "Petersen" spelling of the name. Accordingly, the Court will spell Mrs. Petersen's name with a third "e".

**2.** During oral argument counsel for Defendant asserted that *Harambasic,* 186 Ariz. 159, 920 P.2d 39, stood for the proposition that exclusivity of use is required to establish a prescriptive easement. *Harambasic* does not

terruption for the prescriptive period.' " *Paxson,* 50 P.3d at 426 (quoting *Restatement: Servitudes,* § 2.17). As discussed above, Plaintiffs' evidence shows use during a more than 10–year period but does not necessarily show that such use was uninterrupted. However, under Arizona law "a condition once shown to exist is presumed to continue until there is evidence to the contrary." *Day v. Frazer,* 51 Ariz. 474, 78 P.2d 140, 141 (1938).[3] Accordingly, Plaintiffs are entitled to a presumption that the use that Mrs. Petersen described beginning in 1929, continuing around 1936–38, and ongoing in 1950, was uninterrupted even though Mrs. Petersen did not explicitly so state. Moreover, although the use must be "continued" during the 10–year period, it need not be continuous. *See United States v. Platt,* 730 F.Supp. 318, 322 (D.Ariz.1990) (finding that quadrennial trek across land beginning, at least, in 1924 was sufficient to establish a prescriptive easement); *see also Kay v. Biggs,* 13 Ariz.App. 172, 475 P.2d 1, 3 (1970) (finding that annual two or three week use of summer home was sufficient to establish adverse possession). Defendant's argument that "[s]poradic use of the road does not entitle the Bunyards to claim" a prescriptive easement (Cross Motion at 4) is unpersuasive in light of the above-cited cases.

Moreover, Defendant does not offer evidence to counter or rebut Plaintiffs' evidence or the corresponding presumption of continued uninterrupted use. Instead, Defendant merely "disputes" the existence of the road during all of those times. (*E.g.* Defendants' Response to Plaintiff's Statement of Facts and Defendants' Statement of Facts in Support of Its Cross–Motion for Summary Judgment ("DSOF") at ¶ 8 ("The United States does not dispute Mrs. Petersen's statement. The United States disputes the existence of the road at that time.").) Defendant offers evidence that the Old Standard Mill Road does not show up in aerial photographs of the area taken in 1960, 1968, and 1977, and suggests that the Old Standard Mill Road was unlikely to exist in the 1950s "as it would appear in the 1960 photo if it existed prior to 1960." (DSOF at ¶¶ 44–47.)

Plaintiffs argue that Defendant's statements regarding the existence of the Old Standard Mill Road in the 1950s are irrelevant to whether a prescriptive easement was established because such an easement would have existed prior to 1950. Moreover, Plaintiffs point out that summary judgment cannot be defeated by Defendant's " 'mere allegations or denials' " of the facts asserted by Plaintiffs. (Plaintiffs' Reply Supporting Motion for Summary Judgment and Response to Cross–Motion for Summary Judgment) (Doc. # 39) ("Plaintiff's Reply") at 3 (quoting Fed. R.Civ.P. 56(e).)[4] Plaintiffs are correct

---

provide an exclusivity of use requirement for a prescriptive easement. *Id.* at 40.

**3.** *See also State v. Miranda,* 3 Ariz.App. 550, 416 P.2d 444, 449 (1966) (affirming a jury instruction that recognized that "facts of a continuous nature give rise to an inference within logical limits that it exists at a subsequent time").

**4.** That the Old Standard Mill Road may not have been used between 1950 and 1977 does not extinguish any prescriptive easement established by 1950. *See George v. Gist,* 33 Ariz.

93, 263 P. 10, 11 (1928) ("Prescriptive title is as good as that acquired by deed or otherwise and can be alienated only in the same way as such other title."); and *Squaw Peak Community Covenant Church v. Anozira Dev. Inc.,* 149 Ariz. 409, 719 P.2d 295, 300 (1986) ("The law is well-settled that the owner of an easement created by express grant is under no duty to make use of the easement in order to retain his entitlement."). Moreover, during oral argument counsel for Defendant conceded that if a prescriptive easement had been established by 1950, non-use until the 1970s would not extinguish the prescriptive right.

that Defendant's arguments about the existence of the road in the 1950s show, at best, "some metaphysical doubt as to the material facts" but do not meet the Defendant's burden of "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)).[5]

Plaintiffs have presented evidence satisfactory to show (via both direct evidence and rebuttable presumption) that there was open and continued use of the Old Standard Mill Road for a 10–year period. Defendants have presented no evidence to rebut Plaintiffs' evidence. Accordingly, for purposes of summary judgment, Plaintiffs have satisfied the first prong for showing a prescriptive easement.

■■■ **Under a claim of right and hostile to the true owner:** Plaintiffs do not present evidence that the use during the 1920s and 1930s was under a claim of right and hostile to the true owner. However, Plaintiffs argue that they are entitled to rely on a presumption under Arizona law that their use is hostile and under a claim of right. Plaintiffs appear to be correct:

> We reaffirm the rule that when a person uses an easement over the land of another in an open, visible, continuous and unmolested manner, there is a presump-

tion that the use is hostile to the title of owner of the land, and under a claim of right, as opposed to the use being permissive.

*Harambasic,* 920 P.2d at 40.

In light of that presumption, the defendant has "the burden of proving the use was permissive." *Id.* at 41.[6] Defendant attempts to rely on Mrs. Petersen's statements to show that the claimed use was permissive. Specifically, Defendant points to the following from Mrs. Petersen's deposition testimony:

> Q. People's use of the Old Standard Mill wasn't something people were trying to keep secret, was it?
>
> A. No.
>
> Q. It wasn't like people were trespassing across somebody else's lot?
>
> A. Oh, no, no, no, no, no. I never heard of such a thing.

(Petersen Deposition at 34.)

Defendant argues that this exchange indicates "that the use of the road, if any, was permissive and not hostile." (Cross Motion at 4–5.) The Court disagrees with Defendant's interpretation. Mrs. Petersen's statements are consistent with a belief that the adverse users had a right to make use of the property, *i.e.*, that the use was open and under a claim of right. *See*

---

**5.** During oral argument, the Court asked counsel for Defendant if she had any affirmative evidence to demonstrate that the road described by Mrs. Petersen was actually at another location. Counsel acknowledged that Defendant has no evidence "that goes back to 1929 or 1930 that would suggest that there was a road at [another] location."

**6.** The Court notes that, in an earlier case, the Arizona Supreme Court stated a somewhat different proposition regarding hostile use:

> "The prevailing principle seems to be that while a way may be acquired by user [*sic*] or prescription by one person over the unenclosed land of another, mere use of the way for the required time is not, as a gener-

al rule, sufficient to give rise to the presumption of a grant. Hence, generally some circumstance or act in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive is required to establish a right by prescription."

*Etz et ux. v. Mamerow,* 72 Ariz. 228, 233 P.2d 442, 445 (1951) (quoting 17 Am.Jur., Easements, Sec. 71, p. 980).

Because the statement in *Etz* appears to be dicta, rather than a holding, the Court will rely on the later, explicit holding in *Harambasic* as providing a proper statement of Arizona law. *See also Brown v. Ware,* 129 Ariz. 249, 630 P.2d 545, 547 (Ariz.App.1981) (applying a similar presumption without discussion).

*Harambasic,* 920 P.2d at 40 (granting prescriptive easement where plaintiff testified that "he used the road and had never asked anyone for permission to do so because he believed he had just as much right to use it as did the [owners]"). Defendant's interpretation of Mrs. Petersen's statements would be equivalent to adding a knowledge requirement to demonstrate adverse use. *But see Ammer,* 818 P.2d at 197 ("[U]nder Arizona law, a person does not have to know that the property that he is using belongs to another in order to establish a prescriptive easement.").

The Court finds that Defendant has not presented evidence that the use was permissive and has not rebutted the presumption that the use of the Old Standard Mill Road was hostile and under a claim of right. Accordingly, Plaintiffs have, for purposes of summary judgment, satisfied the second prong for showing a prescriptive easement.

Plaintiffs have, via both unrebutted evidence and unrebutted presumptions, produced evidence to satisfying all of the elements for a prescriptive easement and, thus, have shown that a prescriptive easement was established by 1950. Defendant has not presented evidence to rebut Plaintiffs' evidence and, thus, has not shown that there is a genuine issue of material fact for purposes of summary judgment. Accordingly, as to Plaintiffs' Count I (Quiet Title—Prescriptive Easement), the Court will deny Defendant's Cross Motion and grant Plaintiffs' Motion.

**7.** At oral argument, counsel for Defendant argued that ANILCA "has been interpreted to mean completely surrounded," and pointed to *Adams v. United States,* 255 F.3d 787, 790 (9th Cir.2001) (*"Adams II "*), *Adams v. United States,* 3 F.3d 1254 (9th Cir.1993) (*"Adams I "*), and *U.S. v. Jenks,* 129 F.3d 1348 (10th Cir.1997). Although those cases address AN-

## III. PLAINTIFFS' CLAIM UNDER REV. STAT. § 2477

Plaintiffs concede that their "R.S. 2477 claim should be dismissed." (Plaintiffs' Reply at 6.) Accordingly, the Court will grant Defendant's Cross Motion as to Plaintiffs' Count II (Quiet Title—R.S. § 2477).

## IV. PLAINTIFFS' CLAIM UNDER ANILCA

■ Plaintiffs claim that Defendant is obligated to provide "access 'adequate to secure the owner the reasonable use and enjoyment' of nonfederal land within the boundaries of the National Forest System." (Amended Complaint at ¶ 14 (quoting under ANILCA, 16 U.S.C. § 3210).) Defendants assert that Plaintiffs cannot avail themselves of ANILCA because their property is only bordered on three sides by National Forest Land and, thus, is not "within" the boundaries of the National Forest System.[7] In response, Plaintiffs assert that their property is "[c]learly within the boundaries of the Apache–Sitgeaves [*sic* ] Nation [*sic* ] Forest. There is nothing in the statute to suggest that ANILCA is only for landlocked properties . . . ." (Plaintiffs' Reply at 5.)

The Court humbly suggests that Congress's use of the phrase "within the boundaries" is a strong indicator that ANILCA is intended to apply only to landlocked properties. Moreover, ANILCA's legislative history supports the common sense interpretation of "within the boundaries." *See* P.L. 96–487, ALASKA NATIONAL INTEREST LANDS CONSERVATION ACT, SENATE REPORT NO. 96–413 (NOV. 14, 1979) (addressing issues of "inholder" access).[8]

ILCA claims raised in connection with "completely surrounded" land, *e.g., Adams II,* 255 F.3d at 793, the cases cannot be cited as interpreting ANILCA as only applying to "completely surrounded" land because the issue was not before those courts.

**8.** The Ninth Circuit has described an "inholder" as an owner of "private property com-

Accordingly, the Court will grant Defendant's Cross Motion as to Plaintiff's Count III (Quiet Title—16 U.S.C. § 3210).

## V. ADDITIONAL MATTERS

At oral argument, counsel for Defendant suggested that because of the unique nature of ownership of land by the United States of America, "pursuant to the *Adams* cases" Defendant is entitled to "regulate" any prescriptive easement that exists over the land in question. Moreover, counsel asserted that "the Government may regulate it [the easement] by deciding to close the road and providing the Bunyards with alternate access."

The Court has reviewed both *Adams I* and *Adams II* and finds nothing to support counsel's contention. Both *Adams I* and *Adams II* addressed easement claims under ANILCA. *See Adams I,* 3 F.3d at 1259 ("The Alaska National Interest Conservation Act provides the Adamses' easement."). The *Adams I* court found that the ANILCA easement was subject to "reasonable Forest Service regulations." *Id.* at 1260; *see also Adams II,* 255 F.3d at 792 (recounting the holding of *Adams I* ). Here, however, Plaintiffs' prescriptive easement is a fully recognized property right, independent of ANILCA, under the Quiet Title Act and Arizona law. *See George,* 263 P. at 11; *Kinscherff,* 586 F.2d at 161. Nothing in either of the *Adams* cases address Defendant's power to regulate private property right easements established prior to government ownership of the land in question.

Nevertheless, the Court recognizes Defendant's Constitutional and statutory authority over public lands, and is equally aware that the Constitution constrains Defendant's ability to take private property without compensation. Neither the *Adams* cases nor the authority cited by Defendant in its briefs appears conclusively to address the authority asserted by Defendant's counsel during oral argument; *i.e.,* the authority to regulate and, specifically, terminate a prescriptive easement.[9] Moreover, it is not clear to the Court that Defendant could exercise its authority without knowledge of the common law rights held by Plaintiffs as established in this proceeding. *See United States v. Jenks,* 22 F.3d 1513, 1518 (10th Cir.1994) (noting the "important role" that "a determination of Defendant's patent or common law rights will play in the permit issuance process") (citing 36 C.F.R. § 251.114(f)(1) (requiring a landowner to demonstrate "a lack of any existing rights or routes of access available by deed or under State or common law" before the Forest Service can grant access rights)).

Plaintiffs conceded, at oral argument, that Defendant can apply "reasonable restrictions" over the easement but contested whether Defendant can unilaterally "shut it down." Because the issue of Defendant's authority to regulate or terminate the prescriptive easement was not adequately raised and briefed by the parties, the Court emphasizes that this Order does not address the extent of Defendant's authority, if any, to regulate the use or existence of Plaintiffs' prescriptive easement.

### Conclusion

Accordingly,

**IT IS ORDERED** granting Plaintiffs' Motion for Summary Judgment (Doc. # 32);

---

pletely surrounded by federally owned National Forest System lands." *Adams II,* 255 F.3d at 790.

9. For example, Defendant cites to 43 U.S.C. § 1764(c) which addresses defendants authority to terminate "rights of way."

IT IS FURTHER ORDERED denying Defendant's Cross Motion for Summary Judgment (Doc. # 37) in part, as to Plaintiffs' First Count, as discussed above;

IT IS FURTHER ORDERED granting Defendant's Cross Motion for Summary Judgment (Doc. # 37) in part, as to Plaintiffs' Second and Third Counts, as discussed above; and

IT IS FURTHER ORDERED that Plaintiffs shall lodge a proposed form of Judgment with the Clerk of the Court no later than 15 days from the date of this Order; Defendant shall have 10 days from the date the form of Judgment is lodged in which to file any objections.