**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HENRY SKRANAK,
                                    *Plaintiff,*

                and

ALAN SKRANAK; JAMES SKRANAK,
                *Plaintiffs-Appellants,*          No. 04-35053

                v.                                D.C. No.
                                                  CV-00-00233-DWM
ROBERT CASTENADA, Supervisor,
Kootenai National Forest; UNITED
STATES FOREST SERVICE, of the
United States Department of
Agriculture,
                *Defendants-Appellees.*

CHARLES W. HARPOLE,
                *Plaintiff-Appellant,*

                v.                                No. 04-35056

ROBERT CASTENADA, Supervisor,                     D.C. No.
Kootenai National Forest; UNITED                  CV-00-00232-DWM
STATES FOREST SERVICE, of the
United States Department of                       OPINION
Agriculture,
                *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
February 10, 2005—Seattle, Washington

13989

Filed October 12, 2005

Before: Monroe G. McKay,* Diarmuid F. O'Scannlain, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

*The Honorable Monroe G. McKay, Senior United States Circuit Judge
for the Tenth Circuit, sitting by designation.

## COUNSEL

Ward A. Shanahan, Gough, Shanahan, Johnson and Waterman, Helena, Montana, argued the cause for the appellants and was on the briefs.

Katherine W. Hazard, Washington, D.C., argued the cause for the appellees. Thomas L. Sansonetti, Assistant Attorney General, Ruth Ann Storey, and John Smeltzer, United States Department of Justice, Washington, D.C., and Alan Campbell and James Snow, United States Department of Agriculture, Washington, D.C., were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States Forest Service properly denied owners access to their patented mining claims within the Kootenai National Forest in Montana.

### I

### A

Alan Skranak and James Skranak ("the Skranaks") currently own the 50-acre "Fourth-of-July" tract,[1] consisting of

---

[1]Control passed to them when their father, Henry Skranak, died during this litigation.

four mining claims in the Kootenai National Forest in Montana. The United States granted a patent on one in 1907 and on the other three in 1912. A six-foot wide wagon road was built to the tract in 1902. The road has long since been closed to motorized traffic and now functions as the Fourth-of-July trail.

Henry Skranak, the Skranaks' father, bought the Fourth-of-July tract in 1961 and has had numerous run-ins with the Forest Service over issues of access in his efforts to work the mining claims. In 1995 Henry Skranak requested a special use permit under the Alaska National Interest Land Conservation Act ("ANILCA") to construct a 2.1-mile access road on and near the Fourth-of-July trail. The Forest Service considered the request and its potential effects on endangered species, water quality, and recreation, among other concerns. The Forest Service decided to allow the road to be built, but along a different, 2.52-mile route, in order to minimize its impact. Road construction would only be permitted from June 16 to October 15 in each year. The Forest Service promised to issue an "easement" good for a ten-year period and renewable thereafter upon completion of construction, estimated to be within two to three years. In order to protect grizzlies, the Forest Service would permit only 46 vehicle round trips from June 16 to September 15, and 38 round trips from September 16 to November 15, with unlimited access in the winter. Use would be forbidden from April 1 to June 15.

B

Charles Harpole owns the 40-acre "Wayup Mine" tract, consisting of two mining claims which the United States patented in 1903. Currently, a non-system primitive road off of Forest Road 6746 ("FR 6746") provides access. FR 6746 is open year round to motorized traffic, but is in need of maintenance and reconstruction. The Forest Service states that FR 6746 was built sometime between 1900 and 1930, and has not been maintained for 30 years. The non-system road is 1.3

miles long and in need of significant work before it can be used by motorized traffic.

Beginning in 1983, Harpole worked the mining claims episodically. During such times, the Forest Service allowed him to have access but required that he obtain a permit. The Forest Service has blocked access entirely during those periods in which Harpole was not using it.

In 1995, after nearly a decade of inactivity, Harpole applied for a special use permit under ANILCA to reconstruct and to use FR 6746 and the non-system road. The Forest Service considered the request and its potential effects on endangered species, water quality, and recreation, among other concerns and granted Harpole's permit, but with conditions. Road construction would only be permitted from June 16 to October 15 in each year. The Forest Service promised to issue an "easement" good for a ten-year period and renewable thereafter upon completion of construction, estimated to be within two to three years. In order to protect grizzlies, the Forest Service would permit only 38 vehicle round trips from April 1 to June 15, 46 vehicle round trips from June 16 to September 15, and 38 vehicle round trips from September 16 to November 15, with unlimited access in the winter.

## C

Henry Skranak and Harpole appealed from the denial of unconditional permits, complaining that the special use permits either took or ignored their easements. They also complained that they ought not to bear the cost of improving Forest Service roads that would become accessible to the public. The Forest Service denied their joint administrative appeal.

At that point, the Skranaks (their father having died and ownership of the Fourth-of-July tract having passed to them) filed suit in district court to quiet title to an easement to the

Fourth-of-July tract under the Quiet Title Act and to challenge the Forest Service's permit as arbitrary and capricious under the Administrative Procedure Act ("APA"). In a separate action, Harpole raised similar Quiet Title Act and APA claims with respect to the Wayup Mine.

On cross motions in the two respective actions, the district court granted summary judgments in favor of the Forest Service. The district court held that neither the Skranaks or Harpole had owned an easement under any theory; that if they did, ANILCA had extinguished it; and, with respect to the APA claims, that the conditions on the permits were reasonable.

Harpole and the Skranaks have timely appealed.

II

**[1]** As the district court should have, we forbear any consideration of the Skranaks' and Harpole's easement claims under the Quiet Title Act until we determine whether we have jurisdiction. The Skranaks and Harpole filed suit on those claims on December 28, 2000. The Quiet Title Act contains a 12-year statute of limitations. 28 U.S.C. § 2409a(g). Therefore, the Skranaks' and Harpole's claims are barred if they knew or should have known of the United States' adverse claim by December 28, 1988.

**[2]** Such bar is jurisdictional. The Quiet Title Act is a waiver of sovereign immunity. If the statute of limitations has run on a waiver of sovereign immunity, federal courts lack jurisdiction. *Block v. North Dakota*, 461 U.S. 273, 292 (1983); *see also Adams v. United States*, 255 F.3d 787, 796 (9th Cir. 2001) ("*Adams I*") (holding that a district court grant of summary judgment to the government on a Quiet Title Act claim was improper because the statute of limitations had run, removing jurisdiction). Although the United States did not move to dismiss the Quiet Title Act claim on statute of limita-

tions grounds below, jurisdictional bars cannot be waived by the parties and may be addressed *sua sponte*. *Humboldt County v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982). Before reaching the merits, then, we must decide whether the Skranaks and Harpole have actions to quiet title that accrued before December 28, 1988.

### A

**[3]** We have given significant guidance as to when a Quiet Title Act statute of limitations begins running in *McFarland v. Norton*, No. 03-35831, ___ F.3d at ___ (9th Cir. 2005). We pointed out that the government, in its capacity as the owner of the alleged servient tenement, has "the right to reasonable use of its land," and we concluded that "mild interference with the use of an easement pursuant to the government's own property interests will not start the statute of limitations running." *Id.* at ___. More importantly, we explained that federal agencies like the Forest Service often have regulatory powers over easements and other property interests, including, presumably, the ability to require permits and put conditions on use. *See, e.g., Clouser v. Espy*, 42 F.3d 1522, 1538 (9th Cir. 1994) (holding that 16 U.S.C. § 551 confers broad powers on the Forest Service to regulate roads for the good of the forests). Therefore, to avoid forcing landowners and the government into "premature and often unnecessary suits" over title, *Michel*, 65 F.3d at 132, we concluded that government "regulatory or supervisory actions, as opposed to those that deny the easement's existence, will not trigger the statute of limitations." *McFarland*, No. 03-35831, ___ F.3d at ___.

### 1

**[4]** Since the statute of limitations issue was not addressed in the district court, the record is not well developed. Even on the current scanty record, however, we are able to determine that the Skranaks' action to quiet title accrued before 1988. By the 1940s, at the latest, the Forest Service had converted

the road into a trail usable only for hiking and riding. Although merely barring the public's vehicular access would not have necessarily been inconsistent with the Skranaks' predecessors-in-interest's easement,[2] affirmatively converting the road to a trail barred not only the public's vehicular access but the owner's use of the alleged easement as well. Because converting the road to a trail barred access in a way that was neither temporary nor obviously overcome by the securing of a permit or special permission, the Skranaks' predecessors-in-interest should then have been put on notice. In addition, Henry Skranak appears to have been well aware that the Forest Service was adverse to his claimed right of access. In 2000 he stated that he "ha[d] been denied access to his property for more than 39 years." In a 1991 letter, he complained that "[d]ue to the policy of the Department of Agriculture and the Forest Service over the years, we have been barred out by berms, Kelly ditches, arrests and fines." Such was sufficient to start the statute of limitations running and thus to defeat the Skranaks' ability to bring a quiet title action. Therefore, the grant of summary judgment against the Skranaks on their Quiet Title Act claim must be vacated and the district court is instructed to dismiss for lack of jurisdiction.

2

**[5]** In Harpole's case, what evidence there is tends to suggest that previous restrictions on his access were consensually negotiated, or at least were consistent with the Forest Service acting in a regulatory capacity (i.e., requiring a permit for further use), instead of in the capacity of a landowner claiming exclusive rights.[3] In 1983, when Harpole started making

---

[2]In *Park County, Mont. v. United States*, 626 F.2d 718, 720-21 (9th Cir. 1980), we held that the County was on notice of the United States' adverse claim to the County's easement when the United States closed a road to the public. Though a County's access cannot be meaningfully distinguished from the public's access, an individual's can.

[3]Though less likely, it may also be that the Forest Service has abandoned and then reasserted claims of exclusive right. S*ee Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995).

repairs on the non-system road (it had not been used since at least 1971), a forest ranger called him and agreed that he had a "right of access" but told him he needed to request a special use permit or file a plan of operations. Harpole and the ranger "mutually agreed that the access [ ] created would be closed by the Forest Service until [Harpole] had acquired a special use permit." In 1984, Harpole's plan of operations was approved, which allowed Harpole and a partner unlimited access provided no one else was allowed access. In 1986, the Forest Service wrote to Harpole indicating that, according to "national policy," the way for him to "assert[ ] rights of access is through the special use permit process . . . ." Only after a representative of Harpole's Wayup Corporation informed the Forest Service that same year that Harpole would not need access for the "foreseeable future" did the Forest Service install an earthen barrier. The record is silent with respect to other prior and subsequent jurisdictional events. In the district court, further development of the record would be appropriate. *See Berardinelli v. Castle & Cooke, Inc.*, 587 F.2d 37, 39 (9th Cir. 1978) (directing district courts to "make factual findings" necessary to inquiries into jurisdiction and explaining that the factual determinations necessary to resolve a statute of limitations claim are different from those necessary to resolve the substantive claim); *see also Lombard v. United States*, 194 F.3d 303, 309-13 (1st Cir. 1999) (remanding to the district court for a determination of statute of limitation facts in a Quiet Title Act claim). Therefore, the grant of summary judgment must be vacated. On remand, the district court should develop the record to determine whether Harpole had notice that the Forest Service asserted exclusive ownership before December of 1988.

### III

The Skranaks and Harpole also challenge the Forest Service's ANILCA access permit on APA grounds. *See* 5 U.S.C. § 706. They claim that the Forest Service failed to comply with its own regulation, 36 C.F.R. § 251.114(f), by refusing

to determine whether the Skranaks or Harpole already owned easements.

## A

**[6]** As with the Quiet Title Act claims, we must first consider whether this court has jurisdiction. "[T]he APA waives sovereign immunity for suits against federal officers in which the plaintiff seeks nonmonetary relief. The APA, however, does not waive immunity as to any claims which are expressly or impliedly forbidden by 'any other statute that grants consent to suit.' The Quiet Title Act . . . is such an act." *Metro. Water Dist. of S. California v. United States*, 830 F.2d 139, 143 (9th Cir. 1987) (citing *Block v. North Dakota*, 461 U.S. 273, 286 (1983)). For any easement claims that were resolved in an administrative proceeding commenced 12 years or more after the Skranaks or Harpole were on notice of the need to quiet title, the district court has no jurisdiction. However, though "[t]he statute limits the time in which a quiet title suit against the United States can be filed, . . . . [it] does not purport to effectuate a transfer of title. If a claimant has title to a disputed tract of land, he retains title even if his suit to quiet his title is deemed time-barred under § 2409a(f)." *Block v. North Dakota*, 461 U.S. 273, 291 (1983). While *Block* would bar judicial review of an agency's resolution of state or common law property claims raised in an administrative proceeding, *Block* does not bar the agency from resolving such claims in the administrative proceeding itself. Neither does *Block* prevent us from reviewing an agency's failure to resolve such claims. Because the Skranaks and Harpole only challenge the Forest Service's failure to resolve whether they had easements, the district court has jurisdiction to entertain a claim under the APA.

## B

**[7]** The Skranaks and Harpole claim that 36 C.F.R. § 251.114(f) requires the Forest Service to consider easement

claims in an application for an ANILCA access permit. That regulation reads in relevant part: "the authorizing officer, prior to issuing any access authorization, must also ensure that (1) [t]he landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law . . . ." They further claim that the Forest Service refused to address whether they owned a common law easement, in apparent contravention of this regulation.

The Skranaks and Harpole are correct that the Forest Service refused to address whether they had common law easements. The Forest Service did determine, although cursorily, that they did not have an easement under 43 U.S.C. § 932 (1938) (repealed) (known as "R.S. 2477") (providing that "the right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted"). The Forest Service did not, however, address the Skranaks' and Harpole's common law easement claims. The Forest Service only responded that "it is not necessary to address whether there may have been some common law right of access to the private property prior to the passage of the ANILCA."

The Skranaks' and Harpole's claim that such response violated 36 C.F.R. § 251.114(f) seems persuasive. *See United States v. Srnsky*, 271 F.3d 595, 604 (4th Cir. 2001) (stating that 36 C.F.R. § 251.114(f) appears to "contemplate exemptions for individuals with preexisting access rights."); *United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) ("Although we leave it to the Forest Service to interpret [36 C.F.R. § 251.114(f)(1)], it appears that the Forest Service itself recognizes that any deed or common law access rights a landowner possesses may affect the terms of the permit or play a role in the decision to issue a permit."). Nevertheless, we would normally give broad deference to the Forest Service on the grounds that it best understands its own regulations. *See, e.g., Dep't of Health & Human Serv. v. Chater*, 163 F.3d 1129, 1134 (9th Cir. 1998).

We are persuaded that our normal deference to the Forest Service does not require rejecting the Skranaks' and Harpole's reading of 36 C.F.R. § 251.114(f). When the Skranaks and Harpole raised their reading of the regulation in their administrative appeal, the Forest Service did not offer an alternate interpretation of the regulation—or even mention it at all—nor is their interpretation discernible from the reasoning found in the record. *See Davis v. United States*, 348 F.3d 772, 781 (9th Cir. 2003) (stating that agency decisions are upheld under the APA "unless [a] thorough inspection of the record reveals no rational basis for the agency's action"). Perhaps the Forest Service did not "entirely fail[ ] to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983), but there is scant evidence in the record to suggest otherwise. In any event, the Forest Service has put the matter beyond question by conceding at oral argument that 36 C.F.R. § 251.114(f) does indeed require it to make an easement-ownership determination.[4]

[8] Such interpretation of 36 C.F.R. § 251.114(f) potentially puts the Forest Service position into conflict with *Adams I*. In that case, interpreting ANILCA *de novo*, we held that Congress meant (1) to make ANILCA permits the exclusive means of access over Forest Service land and (2) to have such access determined without respect to any existing easements. *Id.* at 1259 ("Although the Adamses may have [an easement by necessity] under common law, we need not analyze this issue. . . . Common law rules are applicable only when not preempted by statute. Congress has affirmatively spoken in this area through [ANILCA].")*; see also Adams v. United States*, 255 F.3d 787, 794 (9th Cir. 2001) ("*Adams II*") (explaining that "*Adams I* clearly stated that . . . common law claims are preempted by ANILCA"). However, as the agency tasked with administering ANILCA, the Forest Service is not

---

[4]The Forest Service argued that it had in fact done so. As we explain above, such is not the case.

bound to interpret the statute the same way we have when considering it *de novo*. *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 125 S.Ct. 2688, 2700-01 (2005) (holding that agency interpretations are owed *Chevron* or other appropriate deference unless a prior court decision has unambiguously held that the statute's meaning is incompatible with the agency's interpretation). The Supreme Court has explained that a "prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 2700. Since *Adams I* and *Adams II* did not hold that ANILCA was unambiguous nor that their interpretation of it left no room for agency discretion, we must give the Forest Service's regulation the same *Chevron* deference as we would had *Adams I* and *Adams II* never addressed the topic. *Id.*

**[9]** We defer to 36 C.F.R. § 251.114(f) as an interpretation of ANILCA as long as its interpretation is based on a permissible construction of the statutory language. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). The relevant provision of ANILCA reads as follows:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a). Because ANILCA does not expressly refer to pre-existing easements, the Forest Service is free to

interpret it as creating a means of access for those who do not own pre-existing easements at all or as requiring that pre-existing easements be taken into consideration in determining the scope of access granted. This is especially so in light of the Senate Report indicating that ANILCA was meant to increase rather than decrease access. *See* S. Rep. No. 413, 96th Cong., 2d Sess. 1,310, reprinted in 1980 U.S.C.C.A.N. 5070, 5254 (indicating concern that the Secretary of Interior had made access less certain). In any event, we are reluctant to hold unreasonable agency interpretations of statutes that show restraint with respect to pre-existing common-law property interests. *See United States v. Texas*, 507 U.S. 529, 534 (1993) (stating as a rule of construction that "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles" (internal quotation marks and citation omitted)); *cf. California State Legislative Bd., United Transp. Union v. Dep't of Transp.*, 400 F.3d 760, 764 (9th Cir. 2005) (deferring to an agency's interpretation of a statute that showed respect for federalism principles). We conclude that the Forest Service must be held to 36 C.F.R. § 251.114(f)'s requirement that an easement determination be made.

**[10]** It follows that in refusing to determine whether the Skranaks and Harpole had easements permitting them access, the Forest Service violated its own regulations. The district court's summary judgment on the APA claim in favor of the Forest Service was inappropriate and must be reversed.

IV

The district court's grant of summary judgment with respect to the Quiet Title Act claims is vacated; the Skranaks' claim is remanded with instructions to dismiss for lack of jurisdiction and Harpole's claim is remanded for further proceedings consistent with this opinion. The district court's

grant of summary judgment with respect to the APA claims is reversed.

**VACATED IN PART, REVERSED IN PART, AND REMANDED**.