# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE FITZGERALD LIVING TRUST,
        *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA; MIKE
JOHANNS, Secretary of Agriculture;
DALE N. BOSWORTH, Chief, United
States Forest Service; UNITED
STATES FOREST SERVICE; HARV
FORSGREN, Regional Forester,
Region III; and ELAINE ZIEROTH,
Forest Supervisor, Apache-
Sitgreaves National Forests,
        *Defendants-Appellees.\**

No. 04-16149

D.C. No.
CV-02-00069-DKD

OPINION

Appeal from the United States District Court
for the District of Arizona
David K. Duncan, Magistrate Judge, Presiding

Argued and Submitted
April 4, 2006—San Francisco, California

Filed August 30, 2006

Before: Marsha S. Berzon, Johnnie B. Rawlinson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*Mike Johanns, Harv Forsgren, and Elaine Zieroth are substituted as
parties to this appeal for their predecessors Ann M. Veneman, Eleanor S.
Towns, and John C. Bedell. Fed. R. App. P. 43(c)(2).

## COUNSEL

Joel Spector (argued) and Alison Roberts (on the briefs), Mountain States Legal Foundation, Lakewood, Colorado, for the plaintiff-appellant.

Matthew J. Sanders, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendants-appellees.

## OPINION

CALLAHAN, Circuit Judge:

The Fitzgerald Living Trust challenges the district court's summary judgment in favor of the Secretary of the United States Department of Agriculture, the United States Forest Service and individual Forest Service officials ("the Forest Service"). We must decide the nature of the Trust's right of access over a national forest road, and whether the Forest Service's proposed statutory easement, providing the Trust with access over the road, is reasonable.

## I

In 1983, Raymond and Nancy Fitzgerald purchased the O'Haco Cabins Ranch, a twenty-eight acre cattle ranch located in northern Arizona approximately fifty miles southwest of Winslow. The Fitzgeralds maintain a residence on the property and have used and continue to use the ranch as a base camp for their cattle grazing operations in the adjacent Sitgreaves National Forest.[1] The property contains a house, with no electricity or generator, and a water source.

In 1920, President Wilson granted the O'Haco Cabin Ranch property to Stelzer Tillman pursuant to the 1862 Homestead Act. Act of May 20, 1862, ch. 75, 12 Stat. 392-93 (1862) (codified at 43 U.S.C. §§ 161-284) (repealed 1976). The patent transferred the tract of land "with the appurtenances thereof." When the property was surveyed in 1916, it contained simple improvements—a two-room log dwelling, a

---

[1]In 1891, Congress passed the Forest Reserve Act, vesting the President with the authority to reserve forest land from the public domain. 16 U.S.C. § 471 (repealed 1976). Pursuant to this act, in 1898 President McKinley reserved the Black Mesa Forest Reserve, which later became known at the Sitgreaves National Forest. In 1974, the Sitgreaves and Apache Forests were administratively combined and are sometimes referred to jointly as the Apache-Sitgreaves National Forests.

log and dirt root cellar, two pole corrals, and a well. The survey also noted the existence of a nine-mile rough trail from the property leading to a forty-six-mile wagon road to Winslow. At the time the United States granted the O'Haco Cabins Ranch to Tillman, the property was surrounded by the Sitgreaves National Forest or by lands owned by third parties. When Tillman obtained the property, he accessed it by crossing the national forest or land owned by third parties.

When the Fitzgeralds purchased the O'Haco Cabins Ranch in 1983, the property was completely surrounded by the Sitgreaves National Forest. There were several access routes to the property through the national forest. After the Fitzgeralds purchased the ranch, the Forest Service closed all motorized access to the property except for the primary access route, Forest Development Road 56B ("FDR 56B"). Prior to the spring of 1986, the Forest Service never attempted to restrict the Fitzgeralds' or their predecessors-in-interest's use of FDR 56B. In the spring of 1986, however, the Forest Service asked the Fitzgeralds to apply for a "special use permit" under the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1701 - 1785, to continue using the road.[2] The request was made pursuant to the Forest Service's determination that FDR 56B was no longer needed for public use and pursuant to its program of having all uses under permit. The Fitzgeralds applied for the permit but refused to accept it because they

---

[2]Passed in 1976, FLPMA both recognizes preexisting rights-of-way, and provides the Secretary of Agriculture with the authority to grant rights-of-way for roads over lands administered by the Forest Service. 43 U.S.C. §§ 1761, 1769(a). The Act mandates that the government manage public lands to promote environmental protection, recreation, and human occupancy and use. 43 U.S.C. § 1701(a)(8). To that end, FLPMA directs the Forest Service, when granting rights-of-way, to protect scenic and esthetic values, fish and wildlife habitat, the environment, and the public interest, and to achieve these goals by promulgating regulations. 43 U.S.C. §§ 1764(c),(e); 1765(a)(ii),(b)(vi). FLPMA also requires that the United States receive fair market value for use of the public lands. 43 U.S.C. § 1701(a)(9).

felt that they had a legal right to access their property without executing any permit.

In 1988, based on a policy change, the Forest Service offered the Fitzgeralds a "private road easement" under FLPMA in lieu of the special use permit. The Fitzgeralds refused the statutory easement as well. The Regional Forester closed FDR 56B to motorized vehicles, and, in 1993, the Chief of the Forest Service upheld the road closure decision. The Fitzgeralds filed an earlier lawsuit challenging the road closure and seeking to quiet title to a common law easement over FDR 56B, but the case was dismissed as moot when the proposed easement expired.[3]

In January, 2000, the Fitzgeralds submitted a new application to the Forest Service for use of FDR 56B. The Forest Service prepared a thirty-year private road easement with the following notable conditions:

1.  The Fitzgeralds were required to pay the fair market value for the easement, set at $114.31 annually;

2.  The Forest Service reserved the right to terminate the easement if it decided that the road would not remain private, provided it replace the easement with a comparable easement; and

3.  The Forest Service reserved the right to "suspend, revoke, or terminate" the easement pursuant to the Rules of Practice Governing Formal Adjudicatory Administrative Proceedings instituted by the Secretary of Agriculture.[4]

---

[3]*Fitzgerald v. United States*, 932 F. Supp. 1195 (D. Ariz. 1996), *vacated as moot* No. CIV-94-0518-PCT-PRG (D. Ariz. July 19, 1999).

[4]7 C.F.R. § 1.130-1.151. These rules provide for the filing and adjudication of an administrative complaint when, *inter alia*, an administrative order is violated.

The Fitzgeralds did not accept this easement and instead filed suit under the Quiet Title Act, 28 U.S.C. § 2409a, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. In their complaint, the Fitzgeralds alleged, *inter alia*, the following: (1) they have an easement by necessity, an implied easement under the Homestead Act, and an express easement over FDR 56B; and (2) the Forest Service's issuance of the FLPMA easement is arbitrary and capricious because it restricts their common law rights of access and it deprives them of their statutory right of access under the Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3210(a) ("ANILCA"),[5] and their right to a permanent easement under the National Forest Roads and Trails Act ("NFRTA"), 16 U.S.C. §§ 532-538.

The district court granted summary judgment in favor of the Forest Service, holding that the Forest Service has the statutory authority under FLPMA and ANILCA to impose restrictions on a private landowner's ingress and egress over national forest land and that the unrestricted use of FDR 56B for many years did not trump this authority. The district court concluded that the easement's restrictions were reasonable, and that the Forest Service did not abuse its discretion by offering the Fitzgeralds an easement under FLPMA and not pursuant to NFRTA.

While the district court held that any common law rights to an easement were preempted by statute, citing to *Adams v. United States* (*Adams II*), 255 F.3d 787, 794 (9th Cir. 2001)

---

[5]ANILCA, passed in 1980, directs the Secretary of Agriculture to provide access to private property within the boundaries of the National Forest System "as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof" *and* provided that the "owner comply with rules and regulations applicable to ingress and egress" over the federal land. 16 U.S.C. § 3210. In this respect, ANILCA is not limited to national forest land located in the state of Alaska, but rather applies nationwide. *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951, 957 (9th Cir. 1981).

(holding that "common law [easement] claims are preempted by ANILCA and FLPMA where . . . the United States owns the servient estate for the benefit of the public"), it also reached the merits of the Fitzgeralds' common law claims. The court concluded that an easement by necessity did not exist because FLPMA and ANILCA grant the Fitzgeralds access to their property, obviating the necessity requirement for such an easement. Moreover, it held that an implied easement did not exist because the Fitzgeralds' right of access was clearly expressed in those statutes, and, assuming *arguendo* that an express easement was granted based on the 1920 patent language, it would still be subject to Forest Service regulation.

The Fitzgeralds appealed.[6] We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## II

This court reviews the district court's grant of summary judgment de novo. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004); *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

---

[6]On February 26, 2003, Raymond and Nancy Fitzgerald transferred the O'Haco Cabins Ranch property to the Fitzgerald Living Trust. On December 10, 2004, the Clerk substituted the Fitzgerald Living Trust for Raymond and Nancy Fitzgerald as parties to this appeal. Raymond and Nancy Fitzgerald are trustees, and continue to use FDR 56B to access the property. For the sake of continuity, we continue to refer to the appellants as "the Fitzgeralds."

### III

The Fitzgeralds argue that they have a common law easement by necessity over FDR 56B, an easement implied from the language contained in the Homestead Act, and an express easement granted by the language of the 1920 land patent, and because these easements establish preexisting rights of access, they do not need to accept the Forest Service's FLPMA easement to gain access to their property. Particularly, the Fitzgeralds object to the revocable nature of the FLPMA easement and the annual fee imposed for its fair market value because these conditions would fundamentally change the nature of any common law interest they own over FDR 56B.

**[1]** FLPMA and ANILCA clearly subject the Fitzgeralds' access over Forest Service land to the statutory permitting process. *Adams II*, 255 F.3d at 795. While the Forest Service is correct to note that it has the authority under *Adams II* to impose some regulations on the use of FDR 56B regardless of any common law easement held by the Fitzgeralds, this still leaves open the question of whether the regulations imposed are reasonable. For such an inquiry, whether the Fitzgeralds have a common law easement is relevant. For instance, government counsel acknowledged at oral argument that the fee provision of the FLPMA easement would be unreasonable under the APA if the Fitzgeralds owned a preexisting easement because the Forest Service would be imposing a fee for something the Fitzgeralds already owned. Accordingly, we will review the Fitzgeralds' Quiet Title claims to determine whether the proposed FLPMA easement is reasonable.

**[2]** *Skranak v. Castenada*, 425 F.3d 1213 (9th Cir. 2005), supports our conclusion that a determination of common law rights is relevant to the reasonableness of the FLPMA easement. In *Skranak*, the owners of mining claims filed complaints in the district court under the Quiet Title Act and the APA after the Forest Service denied them unconditional special use permits to access their claims. *Id.* at 1216. They chal-

lenged the Forest Service's failure to resolve whether they owned any pre-existing easements to their claims, arguing that the Forest Service violated its own regulation, 36 C.F.R. § 251.114(f)(1), by refusing to do so.[7] *Id.* at 1218-19. The district court disposed of their common law easement claims by concluding that neither plaintiff owned an easement under any theory, and that even if either did, ANILCA extinguished them. *Id.* at 1216. The court also denied plaintiffs' APA claims, concluding that the special use permit conditions were reasonable. *Id.*

This court reversed the district court's APA determinations, concluding that § 251.114(f) requires the Forest Service to address the plaintiffs' common law easement claims advanced in their applications for a FLPMA permit. *Id.* at 1221. The court recognized that requiring an easement-ownership determination under § 251.114(f) presented a potential conflict with the holding in *Adams v. United States* (*Adams I*), 3 F.3d 1254, 1259 (9th Cir. 1993), that access under ANILCA is determined without respect to any preexisting easements. *Skranak*, 425 F.3d at 1219-20. *Skranak* resolved this potential conflict by holding that deference to the Forest Service's regulation was appropriate under *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 125 S. Ct. 2688 (2005). 425 F.3d at 1220. *National Cable* requires that deference be given to an agency's interpretation of a statute unless a prior court decision has held that the statute is incompatible with the agency's interpretation. 125 S. Ct. at 2700-01. It explained that a prior judicial construction of a statute trumps an agency's interpretation only if a prior court decision "leaves no room for agency discretion." *Id.* at 2700. Because neither *Adams I* nor *Adams II* held that ANILCA was unambiguous or that the court's interpretation of ANILCA left no

---

[7]36 C.F.R. § 251.114(f) provides: "[T]he authorizing officer, prior to issuing any access authorization, must also ensure that: (1) The landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law."

room for agency discretion, *Skranak* held that the *Adams* cases did not obviate the requirement that an easement-ownership determination be made under § 251.114(f). 425 F.3d at 1220.

[3] Unlike the plaintiffs in *Skranak*, the Fitzgeralds do not assert that the Forest Service violated the APA by failing to determine their common law rights before issuing the FLPMA easement. Nevertheless, *Skranak* is important because it instructs that the existence of a preexisting easement, as claimed by the Fitzgeralds, is relevant to the Forest Service's issuance of a statutory easement under FLPMA.

## IV

*An Implied Easement Under the Homestead Act*

The Fitzgeralds argue that Congress granted settlers under the Homestead Act an implied easement to access their land, maintaining that the right is implied from the statutory language entitling persons "to enter . . . unappropriated public lands" to establish homesteads. 43 U.S.C. § 161 (repealed 1976). The Fitzgeralds contend that, like statutory railroad land grants, the Homestead Act should be construed liberally, and that without an implied right to cross public lands freely, a homesteader could not settle the land as Congress intended.

The Forest Service responds by pointing to the rule that unless the language in a land grant is clear and explicit, the grant will be construed to favor the government so that nothing passes by implication, citing to *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 59 (1983), *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 617 (1978), and *Albrecht v. United States*, 831 F.2d 196, 198 (10th Cir. 1987). It also urges that implying an easement into the Homestead Act would render meaningless language in the Forest Service Organic Administration Act of 1897, 16 U.S.C. §§ 473-482,[8]

---

[8]The 1897 Organic Act authorized the Secretary of Agriculture to make rules and regulations to protect the national forests. 16 U.S.C. §§ 473-482.

FLPMA, and ANILCA that provides for express rights of access to inholders.

**[4]** While we accept the Fitzgeralds' argument that the Homestead Act contemplated an inholder's access to his property over public lands, we agree with the Tenth Circuit's holding in *United States v. Jenks*, 129 F.3d 1348, 1354 (10th Cir. 1997), that the access across government lands implied into the Homestead Act is not an implied easement. *Jenks* concluded that settlers had an implied license to use public lands to access their property, relying on *Buford v. Houtz*, 133 U.S. 320 (1890). 129 F.3d at 1354. *Burford* described the access to public lands in the nineteenth century as an implied license growing out of custom where lands were left open and no act of government forbade their use. 133 U.S. at 326. Importantly, the Court later clarified that the use of public lands to graze livestock did not confer any vested right on the public. *See Light v. United States*, 220 U.S. 523, 535 (1911). Given the custom of unfettered use of public lands in 1862 when Congress passed the Homestead Act and the Supreme Court's refusal to characterize a settler's use of public lands as a vested property right, we conclude that Congress did not imply an easement over public lands into the 1862 Homestead Act.

**[5]** In sum, we hold that the Homestead Act did not grant settlers a vested property right of access over public lands to their homesteads, but instead merely sanctioned the long-standing customary use of public lands by a settler. Moreover, we reject the Fitzgeralds' assertion that even if the Homestead Act only established an implied license for a settler to access his homestead, the license was transformed into an easement when, in 1920, the Fitzgeralds' predecessor-in-interest obtained the patent to the O'Haco Cabins Ranch. The Fitzger-

---

The Act protects the egress and ingress over the national forests of settlers residing within the boundaries of the forests. 16 U.S.C. § 478.

alds cite to no authority that the grant of a patent changes the nature of a settler's access to his homestead into a vested property right, and we have found none. Our conclusion is also supported by the 1897 Organic Act and ANILCA, providing for a right of access over federal land. Indeed, if the Homestead Act granted a vested access right over federal land, there would have been no need for Congress to subsequently provide for such a right.

*Easement by Necessity*

The Fitzgeralds rely on *United States v. Dunn*, 478 F.2d 443 (9th Cir. 1973), and *Jenks* to suggest that it is well-settled that an easement by necessity against the United States exists. We do not agree. In *Dunn*, successors-in-interest to a Southern Pacific Railroad Company land patent challenged the district court's summary judgment for the United States that rejected the plaintiffs' claim to an easement by implication and necessity. *Id.* at 444-46. We reversed, concluding that a question of fact existed as to the necessity and the scope of the easement. *Id.* at 446. The government did not argue in *Dunn* that an easement by necessity was unavailable against the United States. *Id.* at 444 n.2. However, the dissenting judge concluded that the doctrine of easement by necessity was not binding on the United States under the facts presented in that case. *Id.* at 446 (Wright, J., dissenting). The majority responded to the dissent's position by stating in a footnote that "[s]ince the government did not, in our judgment, raise the point . . . we have not discussed it in the opinion," but went on to say "nevertheless [we] did give it due consideration and concluded that it lacked merit." *Id.* at 444 n.2. We read this statement as declining to render a holding on the question because it was not properly raised, while expressing the tentative views of the panel majority on the question. Thus, *Dunn* is at most persuasive authority for the argument that an easement by necessity may be taken against the United States when it owns the servient tenement.

Moreover, in *Jenks* the Tenth Circuit did not decide whether successors-in-interest to land patented under the Homestead Act obtained an easement by necessity against the United States because it concluded instead that a necessity did not exist in that case. 129 F.3d at 1353. *Jenks* acknowledged the differing views regarding an easement by necessity against the United States, citing to a property treatise favoring the recognition of an easement by necessity against the United States, and a 1980 United States Attorney General Opinion concluding that the common law easement by necessity does not apply to federal lands. *Id.* at 1354 (citing 4 Richard R. Powell, *Powell on Real Property* § 34.07 at 34-76 (rev. ed. 1997), and Rights-of-Way Across Nat'l Forests, 43 Op. Att'y Gen. 243, 255 (1980)).

**[6]** We find ourselves in the same position as the *Jenks* court—not having to decide now whether, as a matter of law, an easement by necessity may be taken against the United States. This is because the Fitzgeralds do not meet the common law elements of an easement by necessity.

**[7]** An easement by necessity is created when: (1) the title to two parcels of land was held by a single owner; (2) the unity of title was severed by a conveyance of one of the parcels; and (3) at the time of severance, the easement was necessary for the owner of the severed parcel to use his property. *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 496 F.Supp. 880, 885 (D. Mont. 1980), 4 Richard R. Powell, *Powell on Real Property* § 34.07 (2006). An easement by necessity is not defeated by the grantee's ability to access a public road over a stranger's property. Powell, *supra*, at § 34.07[1], [3]. Moreover, the easement is extinguished once the necessity is no longer present. *Id.* at § 34.19.

**[8]** The Fitzgeralds argue that they have an easement by necessity over FDR 56B because when the United States granted the patent to Tillman in 1920, the O'Haco Cabins Ranch was surrounded by land owned by the United States or

by third parties. This argument fails because, in addition to any right of access provided by the 1897 Organic Act, FLPMA and ANILCA provide statutory rights of access that would destroy any easement by necessity. *Jenks*, 129 F.3d at 1353-54.

*An Express Easement Under the 1920 Patent*

The Fitzgeralds argue that they own an express easement over FDR 56B based on the language "with the appurtenances thereof" contained in the 1920 patent to Tillman.[9] They urge that this language grants all things necessary for the use and enjoyment of the land and that an easement over the Sitgreaves National Forest was included as an appurtenance to the O'Haco Cabins Ranch because without this easement, the land would be worthless.

[9] The Tenth Circuit rejected this argument in *Jenks*. *Jenks* concluded that an express easement was not created by the inclusion of the words "with the appurtenances thereof." 129 F.3d at 1355. We agree. While the word "appurtenance" will carry with it an existing easement, it will not create the easement. *Humphreys v. McKissock*, 140 U.S. 304, 314 (1891); *see also* 25 Am Jur 2d *Easements and Licenses in Real Property* § 15 (2004) ("The intent to grant an easement must be so manifest on the face of the instrument . . . that no other construction can be placed on it."). Even assuming that the rough trail noted in the 1916 survey became FDR 56B, we conclude that the language "with the appurtenances thereof" lacks the intent and the specificity to convey an easement over the trail.

---

[9]The patent to the O'Haco Cabins Ranch reads:

NOW KNOW YE, That there is, therefore, granted by the UNITED STATES unto the said [grantee] the tract of Land above described; TO HAVE AND TO HOLD the said tract of Land, with the appurtenances thereof, unto the said [grantee] and to the heirs and assigns of the said [grantee] forever[.]

## V

**[10]** The Constitution provides Congress with the authority to "make all needful Rules and Regulations respecting the . . . Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The fair market value annual fee mandated by FLPMA is within the bounds of Congressional authority. Because the Fitzgeralds do not have a common law easement over FDR 56B, they are not being required to pay an annual use fee for something they already own. Except for their dispute over whether they already own the easement, the Fitzgeralds do not challenge the Forest Service's calculation of the fee. Accordingly, we conclude that the $114 annual use fee is reasonable.

**[11]** We conclude further that the conditions in the easement providing for the suspension, revocation, or termination of the easement also are reasonable. FLPMA vests the Forest Service with the discretion to restrict the "duration, . . . transfer or assignment, and termination" of a FLPMA easement. 43 U.S.C. § 1764(c). A termination provision conditioned upon the Forest Service's issuing a replacement easement or the initiation of administrative proceedings based on a violation of the easement is reasonable.

## VI

**[12]** Lastly, the Fitzgeralds challenge the Forest Service's refusal to provide them with an easement under NFRTA. NFRTA was passed out of concern for the construction and maintenance of roads and trails within and near the national forests to meet the increasing demands for timber, recreation, and other uses of the national forests. 16 U.S.C. § 532. It provides for the granting of easements to applicants who are participating in the construction and maintenance of the national forest road system. H.R. Rep. 88-1920 (1964). These easements are provided without cost.

**[13]** The Fitzgeralds are not entitled to a NFRTA easement because they are not using FDR 56B to assist the Forest Service in managing the Sitgreaves National Forest. Given the intent of the statute, there is no support for the Fitzgeralds' argument that the Forest Service erred by failing to exercise its discretionary power to provide a NFRTA easement or by failing to offer any reason for not doing so.

## VII

**[14]** FLPMA vests the Secretary of Agriculture with the authority to regulate access over the Sitgreaves National Forest. 43 U.S.C. § 1761(a). The FLPMA easement offered to the Fitzgeralds, who hold no common law easements over the forest service land, is a reasonable exercise of that authority. Accordingly, the district court's judgment is **AFFIRMED**.